69 N.J. Super. 166 (1961)
174 A.2d 11
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN TAMBURELLO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1961.
Decided September 27, 1961.
Before Judges PRICE, SULLIVAN and LEONARD.
*167 Mr. Samuel D. Bozza argued the cause for the appellant.
Mr. Brendan T. Byrne, Prosecutor of Essex County, argued the cause for respondent (Mr. C. William Caruso, Special Legal Assistant Prosecutor, of counsel, on the brief).
The opinion of the court was delivered by LEONARD, J.S.C. (temporarily assigned).
This is a criminal case. The defendant-appellant was convicted of bookmaking in the Essex County Court on November 7, 1960.
In support of its case the State produced Lt. Kenny, an Essex County Prosecutor's detective, who testified that on April 14, 1959, at or about 12:55 P.M., he and several other detectives, armed with a search warrant, visited premises located at 1965 McCarter Highway, Newark, N.J. The defendant then resided in an apartment located on the third floor of said premises. Upon arriving at the third floor landing the witness met the defendant's wife who at that time had a clothes basket in her possession. The detectives obtained the apartment key from defendant's wife, unlocked the door to defendant's apartment but met resistance. Upon gaining admittance the detectives found two Armstrong publications, a white pad and slip, several blank pads in the pantry and an automatic revolver and a gravity knife in the bedroom drawer. The lieutenant's qualifications as an expert on gambling and horse race betting were admitted and he identified the writing and insignia on said white pad and slip to be the names of various race tracks and the list of names of persons who bet on various horses and the amount of money bet thereon.
This witness further testified that four pieces of 2 x 4 lumber were found in the hall of said apartment; that they fit exactly when placed in a certain position with one placed under the door knob of the entrance door to prevent it from being opened from the outside.
*168 Jerome DeStephano, an investigator working in the Essex County Prosecutor's Office, accompanied Lt. Kenny on this raid and, in addition to corroborating Lt. Kenny's testimony, testified that he found other account slips in the defendant's desk drawer. He further testified that while in the apartment he heard the telephone ring on four occasions and answered it. This witness was asked by the State to divulge said conversations. The defendant objected to these as being contrary to N.J.S. 2A:146-1. The judge overruled the defendant's objection and permitted the investigator to testify to the conversations which were as follows:
"The caller identified himself as Shoes, asked for Johnny and then said, `Laurel, 2-5, $10.00, 10DD; Lincoln, 11-5, 10DD.'" This call was received at 1.38 P.M.
At 2.10 P.M. the witness received another call from presumably the same party, who again identified himself as Shoes, asked for Johnny and inquired as to the bet he had placed at 1.38. The witness responded "2 & 5, 11 & 5 $10. DD" and the party said "O.K." and hung up.
At 1.43 the witness received a call from a party who asked for Johnny and identified himself as Pete. The witness responded "Go ahead" and the party said "Fourth at Gulfstream, Star O'Lee, 7 at Gulfstream, Little Fritz 2, 4 reverse."
The witness also received a phone call from a party who identified himself as Harry and asked for Johnny. The witness said "Go ahead" and the witness thereafter did not hear anything.
The defense called the defendant's wife. She testified that her husband came home from work early that day for the purpose of taking their son to the doctor; that she left the apartment to do some laundry when she met four men in the hall who shoved her and ripped her dress and asked for the key to the apartment.
The defense then offered one Joseph Simmons as a witness. He stated that the defendant was employed by him on April 15, 1959 as a driver; that the defendant worked daily from 8:30 to 4:00 or 4:30 and was paid by check weekly.
Thereafter, one Zippo testified on behalf of the defense. He testified he had known the defendant for 20 years and *169 did business with him, which consisted of the selling of certain commodities to the defendant who would in turn solicit separate individuals to whom he would resell these commodities.
The defendant's 14-year-old son testified he was home from school that day so his father could take him to the doctor. He explained that the pads found by the detectives were used by him for his school work. In regard to the three 2 x 4's found in the apartment, the defendant's son testified that he used two of them for his electric train platform and the third was used to bar the door in addition to the locks on the door.
The defendant denied being a bookmaker. He testified that the pads were used by his son; that he himself was a truck driver and worked from 8:30 to 4:30, and that, in addition, he sold commodities to various individuals. The defendant explained he stayed home from work on the day of said raid so he could take his son to the doctor. While in the apartment the four detectives broke in without identifying themselves. Once they had obtained admittance they searched the apartment and found a gun, a knife and an Armstrong & Turf Flash that he had purchased. He further testified that the long 2 x 4 found in the apartment was used by his wife when he was not at home.

I.
The defendant urges that the admission into evidence of the telephone conversation was error.
The statute which the defendant alleges was violated is the Wire Tap Statute, N.J.S. 2A:146-1:
"Tapping telegraph or telephone lines; disclosing messages. Any person who willfully and maliciously:
a. Cuts, breaks, taps or makes any connection with a telegraph or telephone line, wire, cable or instrument belonging to any other person; or
b. Reads, takes, copies, makes use of, discloses, publishes or testifies concerning a message, communication or report intended for *170 any other person and passing over any such telegraph or telephone line, wire or cable in this state; or
c. Uses any apparatus unlawfully to do any of such acts  Is guilty of a misdemeanor."
Defendant argues section (b) of the above statute makes it illegal for the detective to disclose, publish or testify as to what he heard when he answered said telephone calls and hence said testimony should not have been received in evidence.
Similar telephone conversations were held admissible in State v. O'Donnell, 8 N.J. Super. 13, 16 (App. Div. 1950):
"The telephone conversations concerning the betting were admissible to show defendant's complicity in the offense. The only person at the place of the call to whom the designation `Eddie' could refer was the defendant. The nature of the conversation made it competent as a material circumstance in the case. Of course, such evidence should be admitted with caution (because of the ease with which it may be counterfeited) and, should not be received at all, except when the circumstances rebut every suspicion that it may be spurious."
In the case at bar, the four callers asked for Johnny, the defendant's name being John. He was the only John in the premises. Three of said calls concerned themselves with horse race bets and were therefore competent as material circumstances in this case. The circumstances therefore rebut every suspicion that they were spurious.
The defendant further argues that O'Donnell, supra, is distinguishable from the instant case in that the violation of the foregoing statute was not urged therein. That it was not so urged is true.
However, this statute has been interpreted. In State v. Vanderhave, 47 N.J. Super. 483, 490 (App. Div. 1957), affirmed sub nom. State v. Giardina, 27 N.J. 313 (1958), the Appellate Division said:
"* * * It cannot be doubted that section (a) supra, inhibits the mechanical wire `tap' of a telephone line or facility belonging *171 to any other person, whereas section (b) deals with the taking or use of a message intended for any other person `passing over any such * * * telephone line,' section (c) forbidding the use of any apparatus unlawfully to accomplish such acts. There was here, of course, no mechanical `tap' * * *.
* * * we believe that the non-mechanical monitoring of such conversations cannot be classified as coming within the terms of the statute. We incline to the view that the forbidden appropriation of a message `passing over any such * * * wire,' described in section (b) of the statute, refers back to a wire `belonging to any other person' with which there has been the mechanical interference, or `tap,' described in section (a) thereof."
In State v. Giardina, supra, 27 N.J., at pages 316, 317 Chief Justice Weintraub stated:
"Nor does subsection (b) apply * * *. It may also be that the quoted phrase of subsection (b) also means `any such' telephone line as has been `cut, broken, tapped or connected' with, in violation of subsection (a).

* * * * * * * *
Thus we agree with the conclusion of the Appellate Division that our statute was not violated."
Since it is manifest from the record that there was no mechanical interference and that such mechanical interference is a sine qua non of the statute's applicability, the defendant's argument on this point is deemed to be without merit.

II.
The defendant's final contention is that the receipt of his revolver and knife in evidence, over his objection, was erroneous and prejudicial. As stated before, they both were found in a dresser drawer in defendant's apartment.
Preliminarily to the question involved herein, it should be noted that at trial no reason was advanced for the admission of these two exhibits. At the time of their offer and defendant's objection thereto the prosecutor said he had a reason for said offer but, unfortunately, said reason was stated in a side-bar conference "off the record."
*172 The possession of the revolver and knife by the defendant in his dwelling was not a criminal act. It did not violate our statute pertaining to the carrying of concealed weapons, N.J.S. 2A:151-41. It is excepted therefrom by the very next section of said statute, to wit, 2A:151-42, which provides as follows:
"Nothing contained in section 2A:151-41 of this title shall be construed to prevent a person from keeping or carrying about his place of business, dwelling house, premises, or on land possessed by him, any pistol, revolver, firearm or other weapon * * *"
Certainly this evidence was in no way connected with the crime of bookmaking for which the defendant was tried below. It in no way tended to establish preparation or design on his part to commit said crime so as to be admissible under that theory. State v. Pisano, 33 N.J. Super. 559 (App. Div. 1955), certification denied 19 N.J. 385 (1955).
The revolver and knife should not have been received in evidence.
Now with reference to the next question, was the admission thereof prejudicial? R.R. 1:5-1(a) provides:
"In criminal causes, errors apparent on the face of the judgment record shall be reviewable as heretofore. Error in the admission or rejection of testimony, or in the charge of the court, or in the refusal to charge as requested by the defendant, or in the denial by the court of any matters resting in discretion, or in any other ruling or order made during the course of the trial, shall be cause for reversal if specific objection thereto was made and it appears from the entire record of the proceedings had upon the trial that the defendant thereby suffered manifest wrong or injury * * *."
The State argues that there was an abundance of legitimate proofs to support the charge of bookmaking; that the articles in question were but minor factors and played no significant part in the State's case; and that their admission in evidence, if it be considered erroneous, which is not conceded, constituted mere technical error and does not call for a reversal.
*173 It cannot be denied that there was sufficient legitimate evidence to support the charge of bookmaking.
However, this is not the true test. The criterion is not whether the proofs, shorn of the wrongful evidence, are sufficient to support a conviction, but rather whether the wrongfully admitted proofs, viewed against the entire setting of the case, may have possibly affected the jury's deliberations.
In State v. Samurine, 47 N.J. Super. 172, 181, 182 (App. Div. 1957) (reversed on other grounds, 27 N.J. 322 (1958)), reference was made by a witness to defendant's criminal past; defendant's attorney immediately objected and asked for a mistrial, and the trial court refused to grant same. The Appellate Division held:
"* * * The criterion is not whether the evidence, shorn of the wrongful testimony, is sufficient to support a conviction, but rather whether the prejudicial remarks, viewed against the entire setting of the case may have possibly affected the jury's deliberations. All doubts must be resolved in favor of the defendant. The court in Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 * * * stated that `* * * if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." (Emphasis added)
State v. Wolak, 26 N.J. 464, 481 (1958):
"* * * But an appellate court, in appraising the influential consequences of a direction by the trial judge to a jury of laymen that they must disregard the defendant's criminal record in their consideration of the problem of insanity, does so with the nature of the case in mind, as well as the relation of the proof as limited by the charge to the essence of the defense. The basic test is whether the error thus viewed excites a reasonable apprehension that prejudice resulted to the defendant." (Emphasis added)
*174 State v. Bucanis, 26 N.J. 45, 56 (1958):
"* * * not every suspected deviation from perfection on the part of the prosecutor will justify a reversal of a conviction. Before such a result ensues, his infraction must be clear and unmistakable and must substantially prejudice the defendant's fundamental right to have the jury fairly evaluate the merits of his defense." (Emphasis added)
See also State v. Griffin, 19 N.J. Super. 581, 588 (App. Div. 1952); State v. Bartell, 15 N.J. Super. 450, 453 (App. Div. 1951).
In determining this question of prejudice consideration must be given to the trial judge's charge with reference to the admission of these exhibits. He stated:
"These items, now, the gun, for instance and those 2 x 4's and that knife, that gravity knife, he is not charged with having the knife. He is not charged with having the gun or possession of the gun, but those items were admitted solely for the purpose of throwing some light on his activities. If you find from an examination of all these items in evidence and the testimony, that he was engaged in making of a book, I think the mere possession of the gun in his possession [sic]. However, mere possession of the gun does not say he is guilty of bookmaking." (Emphasis supplied)
No objection was made to that portion of the charge and it is not argued as error. However, in considering the improperly admitted evidence against the entire setting of the case, we cannot disregard the judge's statement to the jury as to the effect to be given this evidence. Thus viewed, prejudicial error is manifest.
Today the public, of which the trial jury is a component part, associates bookmakers with racketeers, hoodlums and other unsavory characters. Guns, knives and other instruments of violence are considered part and parcel of their everyday existence. The connotation is one that goes hand in hand with the other. In the instant case it is that connotation which excites reasonable apprehension that prejudice resulted to the defendant, requiring that the conviction be reversed and the case remanded to the County Court for new trial. So ordered.