103 N.J. Super. 277 (1968)
247 A.2d 136
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CLEMENT C. MASCO, DEFENDANT-RESPONDENT. STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ROBERT J. DALTON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1968.
Decided October 25, 1968.
*278 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Elliott Katz, Assistant County Prosecutor, argued the cause for appellant (Mr. Vincent P. Keuper, County Prosecutor, attorney).
*279 Mr. Robert I. Ansell argued the cause for respondents (Messrs. Anschelewitz, Barr, Ansell & Bonello, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by the State, pursuant to leave granted, from orders entered in the Monmouth County Court in two separate and unrelated bookmaking cases granting motions of defendants Masco and Dalton, respectively, to suppress all of the evidence seized by the police in raids on two private dwellings made following the issuance of search warrants. The cases were consolidated for the purpose of appeal.
In both cases the affidavits submitted to the warrant-issuing judge contained facts indicating that horse race bets were being taken by an unknown man over telephones located in the one-family dwelling houses involved.
In State v. Masco the warrant described with particularity the place to be searched, namely, a dwelling house located at 5 Ash Drive in Neptune Township occupied by one Ralph Hoffner (Masco's father-in-law). It described the property to be seized as "consisting of pads, papers, slips, memorandum, pens, pencils, monies and other bookmaking paraphernalia." It commanded the police:
"* * * to enter and search * * * the dwelling herein above named and the person of those found within, for the property specified * * * and to take into your possession all such specified property which may be found in the said dwelling and on the person of those found within * * *."
In State v. Dalton, the warrant also described with particularity the place to be searched  a dwelling house located at 132 Washington Street in Long Branch, occupied by Marian E. Owen (Dalton's mother). The language in the warrant describing the property to be seized and commanding the search of the place and the persons found within was identical with that contained in the warrant issued in the Masco case.
*280 When the state police officers entered the Hoffner dwelling house on May 18, 1967, Masco, who was the only occupant, was observed coming out of a small office-type room on the second floor in which the police found a telephone and an adding machine. One officer was detailed to receive incoming telephone calls. Masco was arrested and searched. A racing publication, ball-point pen and $74 found on his person were seized by the police. During the period that followed the police received telephone calls placing bets.
On June 7, 1967 state police entered the Owen residence in Long Branch where defendant Dalton was observed standing next to a dining room table upon which they found a telephone, two racing publications, a ball-point pen and sheets of paper containing horse race bets totaling $228. An officer manned the telephone and thereafter "accepted bets" of $358. Dalton was arrested and searched and the police seized $15.20 found on his person.
In both cases the court concluded that the language in the warrants authorizing the search of persons found within the premises lacked the specificity required by the Fourth Amendment of the United States Constitution and R.R. 3:2A-3 relating to the issuance of search warrants. The court ruled that the warrants were totally void ab initio and suppressed not only the evidence found on the persons of Dalton and Masco but all evidence seized.
The State contends that the court erred in holding that the warrants were wholly invalid. It alleges that the existence of probable cause to believe crimes were being committed required for issuance of the warrants is not in dispute; that the premises to be searched were described with particularity; that the property to be seized was specifically described as gambling paraphernalia, and that the warrants contained the necessary requisites for a search and seizure under the Fourth Amendment.
In support of the court's ruling defendants argue that warrants authorizing the search of persons found on the premises, without naming or describing such persons, are *281 general or blanket warrants which are prohibited by the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution, and therefore are void ab initio.
The Fourth Amendment in pertinent part provides:
"[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Similar language is contained in Art. I, par. 7 of our State Constitution, and R.R. 3:2A-3 provides that when grounds exist to issue a warrant the judge shall do so "identifying the property to be seized and naming or describing the person or place to be searched."
Innumerable cases have dealt with the requisite specificity of description for places to be searched (see Steele v. United States, 267 U.S. 498; 45 S.Ct. 414, 69 L.Ed. 757 (1924); State v. Daniels, 46 N.J. 428 (1966); State v. Sheppard, 46 N.J. 526 (1966)), and the "things" to be seized (see Stanford v. State of Texas, 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965)). However, there are few cases which deal with warrants authorizing the search of persons, apparently because usually the search of persons takes place as incidental to a lawful arrest, with or without a warrant. See cases cited in Annotation, "Search of Person - Warrant - Description," 49 A.L.R.2d 1209-1212 (1956). Such authority as there is, and general statements from cases not involving the exact factual situations which here exist, support the view that the validity of a warrant commanding the search of a person depends essentially upon whether or not it describes the person to be searched with such particularity that he may be identified with reasonable certainty.
In the instant cases it is conceded that the warrants would have been valid if they had omitted the mandate to search persons and were directed only to a search of the particularly *282 described premises. There was ample evidence in the affidavits upon which the issuance of the warrants were based to show probable cause for a reasonable belief that bookmaking was being conducted on the premises. See Carney v. United States, 79 F.2d 821 (6 Cir. 1935), and United States v. Diange, 32 F. Supp. 14 (W.D. Pa. 1940).
Thus, the question here is whether a warrant which contains a valid command to search the premises is wholly void ab initio because it also contains an illegal general or blanket command to search all persons found on the premises. We conclude that it is not. We believe that the erroneous inclusion of the command to search the person as well as the premises did not vitiate the warrants  that since the warrants were valid as to one command and not as to the other, the part which was not essential or invalid may be treated as surplusage. Cf. Dow v. State, 207 Md. 80, 113 A.2d 423, 425, 49 A.L.R.2d 1205 (Ct. App. 1955); Martini v. State, 200 Md. 609, 92 A.2d 456, 457 (Ct. App. 1952); State v. Moore, 125 Iowa 749, 101 N.W. 732 (Sup. Ct. 1904). We hold that in the instant cases the court erred in ordering all the evidence to be suppressed on the ground that the warrants were totally void ab initio. At most, defendants here would have been entitled to the suppression of the evidence found upon their persons, if their arrests were not legal and the searches of their persons were not incidental to their arrests. But defendants, through counsel, conceded at oral argument that on the facts adduced the police had probable cause to arrest and search them.
After leave to appeal was granted defendants raised another argument, namely, that the testimony of the telephone bets taken by the police during the raids should be suppressed as evidence. They argue that the search warrants did not authorize the police officers to receive such telephone calls and that if the warrants could be construed as granting such authority they were invalid as general warrants because they did not impose on the officers predetermined judicial restraints of the action to be taken.
*283 The search warrants issued in both cases were based upon a finding of probable cause by the issuing judge that bookmaking was being carried over the telephones located in the premises. The warrants authorized the executing officers to enter the premises and to search for and seize certain property including, inter alia, bookmaking paraphernalia. A telephone is an indispensable facility for a bookmaker engaged in this type of illegal operation and as such obviously must be included in the description of "bookmaking paraphernalia." Cf. State v. Bisaccia, 45 N.J. 504 (1965).
Moreover, the police officers were lawfully on the premises when the incoming telephone calls were made. Cf. State v. Puryear, 94 N.J. Super. 125, 135 (App. Div. 1967), reversed on other grounds, 52 N.J. 81 (1968). In their search for evidence to establish defendants' complicity in the crime they could lawfully receive such calls. Evidence thereof has long been upheld in our courts. See State v. Carbone, 38 N.J. 19 (1962); State v. Tamburello, 69 N.J. Super. 166 (App. Div. 1961); State v. O'Donnell, 8 N.J. Super. 13 (App. Div. 1950); and see Annotation, "Telephone Calls  Admissibility", 13 A.L.R.2d 1409, 1414-1419 (1950). We find no violation of defendants' Fourth Amendment rights.
The search of defendants' persons having been made incidental to a valid arrest the evidence obtained should not have been suppressed.
Reversed.