People of the State of Illinois, Plaintiff-Appellee, v. Stanley Lucas, Defendant-Appellant.

Gen. No. 53,289.

First District, Second Division.

April 8, 1969.

Sherman, Schachtman & Stein, of Chicago (Jack G. Stein and Albert Brooks Friedman, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

A four-count indictment charging gambling was returned against the defendant. Counts I, III and IV were dismissed. The case was tried before a judge without a jury and the defendant was found guilty of gambling under Count II of the indictment. The statute under which Count II was brought provides:

> [Ill Rev Stats 1965, c 38, § 28-1 (a) (5).] A person commits gambling when he knowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or registered; . . .

The defendant was arrested by the Chicago Police Department on May 25, 1966, in a store at 1462 West Madison Street, Chicago. The police had a search warrant for the premises and broke down the front door. As they were breaking the glass door with a sledge hammer they saw the defendant run into a telephone booth 12 or 15 feet from the door. The defendant was arrested coming out of the booth.

304

A detective went into the booth and took a piece of paper from behind the telephone. The paper contained handwritten figures and words. Another such slip of paper with handwriting was recovered, together with a scratch sheet, from the rear portion of the store. At the same time the police apprehended David Tropstein who was in the rear of the store, and with whom this court has no further concern.

One of the State's witnesses was Zelma Stegel, the owner of the premises on the date in question. In her testimony she stated that prior to May 25, 1966, the rent on the store was paid by a man named Frank, whose last name she did not know; that the rent was also paid by Louis Garelli, by John Jackson (now deceased), and by Steve (Stanley Lucas, defendant). She testified that there was no lease on the store and that she did not remember how many years ago Steve gave her rent "but it wasn't last year."

Police Officer Roger Sullivan of the Gambling Unit testified that the slips of paper recovered from the telephone booth and from the rear of the store were records of bets. He stated that when he and his partners went to the store they knocked on the door, announced they were police officers and had a search warrant, and asked that the door be opened. They saw a man (the defendant) running to the telephone booth in the store, and they then used force to gain entrance. Officer Sullivan said: "I ran to the phone booth and stopped Mr. Lucas . . . I observed Detective Steffan search the phone booth and he recovered a slip of paper with writing on it from the back of the phone." This paper was introduced into evidence as People's Exhibit 2. Officer Sullivan described the evidence as follows:

"People's Exhibit 2 for identification in the upper left hand corner has a 1 NY–7, and a dash 1 with a double X behind it. The 1 would be the first race.

**305**

■■■■■■■

The NY would be New York, and the 7 would be the horse that is being played in this race, the number of the horse. The first 1 would be a dollar bet, a bet to win, a dollar to win.

"The second notation on the People's Exhibit 2 for identification is the second race at New York, a $3.00—the third horse, with a 1 win bet plus there is a line drawn to include both bets with a 2D. This 2 would be $2.00 on the Daily Double. And on the corner of this little portion of paper, where it has been lined out, there is a 4, meaning a $4.00 bet, for the $4.00 that he would have bet."

Officer Sullivan further testified that "Louis Garelli came into the store with some detective, looked at the two defendants we had, Mr. Tropstein and Mr. Lucas, and he asked him, he said, 'What happened, Steve?' And at that time, he says, 'I don't know what it was, Louis, they broke the door.' When he said 'Steve' he was looking at Mr. Lucas." Officer Sullivan testified that when they asked the defendant about the exhibit he denied any knowledge of it.

The defendant testified in his own behalf that on May 25, 1966, he was cleaning up the premises at 1462 West Madison and he was arrested. He was putting the chair on top of the table "and all of a sudden the front door was busted in and glass was flying all over the place, and I run in the telephone booth to get away from the glass. As soon as it was all over, I came out." He also testified that he never saw People's Exhibit 2 before, nor did he write on it; that he did not keep any books or records to record gambling bets or wagers of any kind. He stated that the telephone booth was public and lots of people used it; that Tropstein was waiting for him and they were supposed to go to the racetrack together.

There is also testimony in the record before us that the store premises were used on May 17, 1966, as a "poll-

ing place and registration place." There is no indication in the record as to whether the races referred to in Exhibit 2 were before or after that date.

In this court the defendant contends that the State failed to prove him guilty beyond reasonable doubt of the possession of gambling records. In People v. Jackson, 23 Ill2d 360, 178 NE2d 320, a case of an indictment for unlawful possession of narcotics, the court held that the narcotics were not found in an area which was in the defendant's exclusive possession, although he had access to it. The court said at page 365:

> "The State's minimum burden was to show that the defendant has exercised some actual or potential dominion over the narcotics. . . . This is a burden which clearly has not been carried on the facts presented."

The judgment of the Criminal Court was reversed.

■■■■ The fact of possession must be shown beyond a reasonable doubt. It is also the law that where conditions may be explained on a hypothesis of innocence, the courts must accept that explanation. People v. Gregor, 359 Ill 402, 194 NE 550.

In People v. Pugh, 36 Ill2d 435, 223 NE2d 115, a case involving unlawful possession of narcotic drugs, the defendant was found in an apartment for which the police had a search warrant. The complaint charged that a purchase of heroin had been made from one Patricia Plunkett in that apartment and that she had more heroin and cocaine in her possession. A search of the apartment disclosed that the molding in the bedroom had been hinged and in a compartment behind the molding the officers found, among other things, several packages of narcotics. The defendant testified he had been in the apartment about six hours before he was arrested; that he did not live there, and that he had no knowledge of the narcotics in the apartment. He stated he knew that Pa-

tricia Plunkett also went under the name of Patricia Davis. In its opinion the court said it had held that "where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury, or of the court where a jury is waived, a reasonable doubt as to his guilt." (Page 436.) There was no evidence that defendant rented the apartment, nor were any of his personal effects found there. In reversing the judgment the court said at page 438: "We think that the evidence, viewed as a whole, fails to support the conclusion, beyond a reasonable doubt, that the apartment was under defendant's control. It cannot be inferred, therefore, that the narcotics found there were in his constructive possession."

In People v. Evans, 72 Ill App2d 146, 218 NE2d 781, the court held, relying on People v. Jackson, 23 Ill2d 360, 178 NE2d 320, that the defendant was not proved guilty beyond a reasonable doubt of the crime of unlawful possession of narcotic drugs. The court said at page 149: "In this case, the narcotics were found secreted under a public bar. There is no evidence as to how long the packages had been there. Clearly, they could have been put there by anyone at any time."

In the case before us there was no proof whatsoever that the defendant ever had possession of People's Exhibit 2, nor was there any evidence that he ever had any possession—exclusive or otherwise—of the premises in question. The judgment of the Circuit Court is reversed.

Reversed.

LYONS, P. J. and BURKE, J., concur.