2 Ill. App.3d 264 (1971)
276 N.E.2d 480
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
FRANK ROTI et al., Defendants-Appellants.
Nos. 55043, 55044 cons.
Illinois Appellate Court  First District.
November 9, 1971.
*265 *266 Warren D. Wolfson, and Dean S. Wolfson, both of Chicago, for appellants.
Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle, and Patrick Driscoll, Assistant State's Attorneys, of counsel,) for the People.
Judgment affirmed.
Mr. JUSTICE STAMOS delivered the opinion of the court:
After a bench trial, defendants were convicted of the misdemeanor of Keeping a Gambling Place[*] and were each fined $135. They appeal and contend that their guilt was not established beyond a reasonable doubt and that the court considered matters not in evidence.
Initially, defendants were charged with several gambling offenses, including the offense of which they were convicted, and resisting arrest. The proceeding commenced as a preliminary hearing regarding the felony gambling charges under Ill. Rev. Stat. 1969, ch. 38, par. 28-1(a) (5) & (10). Prior to the preliminary hearing the court denied defendants' motion to quash a search warrant and to suppress evidence. At the close of the preliminary hearing the court found no probable cause on the felony charges. The prosecution and defendants then stipulated that the evidence adduced at the preliminary hearing, other than hearsay, would be admitted at the trial on the misdemeanor charge of being a Keeper of a Gambling Place. Defendants rested after the presentation of the prosecution's case in chief. Defendants were found guilty of Keeping a Gambling Place and not guilty as to the charge of resisting arrest.
Officer Bernard Martin, on behalf of the prosecution, testified in the preliminary hearing as follows: On December 21, 1969, he went to the premises located at 219 West 23rd Street with Officer Nick Ahrens. They gained entrance to the basement through the rear door and "found the two defendants, Paul Zivalich and Frank Roti, moving around the basement quite rapidly." On a table they found a Chicago Daily Tribune Sports Section and a quantity of blank water-soluble paper. In a bucket *267 of water next to the table they recovered a quantity of water-soluble paper which had numbers on it. In response to the question whether there were any records of bets, the witness replied: "What I consider markings that they use for bets, yes" and related that he considered them "half bets." This water-soluble paper is used for sports wagers. Only two pieces of the water-soluble paper had legible notations. While the officers were on the premises, the telephone rang on four occasions and they answered and took some bets. At the time they entered the basement they observed defendants run from the table to the bucket of water. The basement appeared to be "lived in," but no key to the premises was recovered. The soluble paper and newspaper were admitted into evidence.
On cross-examination the witness testified that on the water-soluble paper in evidence, the number "eleven" was written, and in a circle the digits "25," and at the bottom the name "Bill." At this juncture of the proceedings, the court found no probable cause as to the felony gambling charges. After a jury waiver and plea of not guilty to the charges of resisting arrest and Keeping a Gambling Place, trial was commenced. The parties stipulated to the evidence presented on the preliminary hearing, other than hearsay. The only other evidence presented was Officer Nick Ahrens' testimony concerning the charge of resisting arrest. At the close of the prosecution's evidence both sides rested, and the court found defendants not guilty of resisting arrest, but guilty of being Keepers of a Gambling Place. The record reflects that the court expressly found that no records of bets were found on the premises and ruled there was no probable cause to believe defendants possessed wager records.

OPINION
 1 In People v. Perry, 34 Ill.2d 229, 232, our Supreme Court had occasion to enunciate the elements of corpus delicti of the statute at bar as follows:
"By the express terms of the statute under which defendant was charged, (Ill. Rev. Stat. 1961, ch. 38, par. 28-3) it was necessary for the prosecution to prove three elements beyond a reasonable doubt. First, that defendant owned, occupied or controlled the building at 114 Center; second, that the building was used for purposes of gambling; and third, that defendant "knowingly" permitted such use."
Similarly, in the case before us, the prosecution had the burden to prove the following three elements beyond a reasonable doubt: First, that the basement in which defendants were arrested was either owned, occupied or controlled by them; second, that those premises were used for the purpose of gambling; and third, that defendants "knowingly" permitted such use.
*268  2 Defendants argue that the State failed to prove beyond a reasonable doubt that the basement apartment in which they were arrested was owned or occupied by them or under their control. The trial record reveals no evidence of defendants' ownership. Also, we feel that considerably more than mere presence is connoted by the term "occupied." The determining issue, therefore, is whether the record adequately shows that the basement was under the control of the defendants.
In support for their argument, defendants cite People v. Hornstein (1965), 64 Ill. App.2d 319, 211 N.E.2d 756. In that case the evidence clearly showed that one co-defendant exercised considerably more dominion over the premises than the other, thereby undermining the contention that both were "in control." In the instant case, neither defendant can rely on such an evidentiary imbalance, for virtually identical evidence was adduced against each.
Defendants also cite several gambling and possession of narcotics cases holding that proof of one's mere presence is insufficient to establish one's exclusive control over premises. People v. Pugh (1967), 36 Ill.2d 435, 223 N.E.2d 115; People v. Lucas (1969), 109 Ill. App.2d 303, 248 N.E.2d 706; People v. Robinson (1969), 102 Ill. App.2d 171, 243 N.E.2d 594.
 3 Defendants minimize the fact that none of these cases concerned a prosecution under section 28-3 and are to that extent distinguishable. While that distinction may seem overly technical, a close analysis reveals its substance. In the cases cited, exclusive control of premises is a fact circumstantially relied upon to establish a Prima facie case of knowing possession of narcotics or gambling apparatus. "Control" is relevant only to the extent that it tends to prove the ultimate fact of knowing possession. Accordingly, a conclusive showing of "control" is essential before the inferred fact can be judicially recognized. In contrast, in a prosecution under section 28-3, "control" is the ultimate issue, and the sufficiency of proof thereon need not be measured by its tendency to prove any other fact beyond "control" itself. We therefore feel that a lesser quantum of proof will suffice to establish "control" under section 28-3 than is necessary in possession cases. We note that a contrary interpretation would virtually immunize a carefully compart-mentalized gambling operation from the sanctions of section 28-3, a result certainly not envisioned by the framers of that statute.
 4 In the case before us, defendants were the only two occupants of a small basement apartment. At the time the police officers entered the apartment, defendants were seen running from a table to a full bucket of water. Upon the table and in the bucket were found water-soluble slips *269 of paper. While these facts might not support a conclusion of knowing possession of the various items within the apartment, we hold that they were adequate to establish the element of "control" under section 28-3.
Defendants contend that the testimony of Officers Martin and Ahrens failed to prove beyond a reasonable doubt that the basement at 219 West 23rd Street was used for the purpose of gambling. It is urged that the testimony establishing the presence of a newspaper sports section and water-soluble paper and the receipt of four phone calls of "bets" did not suffice to satisfy the prosecution's burden.
Officer Martin testified that he recovered a quantity of blank, water-soluble paper from a table in the basement apartment in which defendants were arrested. Next to the table was a bucket containing two more slips of water-soluble paper bearing the numbers "eleven" and "twenty-five" and the name "Bill." Officer Martin offered his opinion, to which there was no objection, that water-soluble paper was typically used for sports wagers. He further testified, again without challenge, that the notations on the slips constituted "half bets." It is clear that this evidence was insufficient to conclusively establish that the paper slips were gambling instruments. (People v. Galan (1969), 110 Ill. App.2d 98, 249 N.E.2d 118.) The trial court recognized this, expressly ruling during the preliminary hearing that the paper slips did not constitute records of bets. As evidence bearing on the issue of gambling purpose, however, this testimony had considerable merit. As noted in Galan, supra, at page 100:
"Possession of soluble paper indicates anticipation of police raids and preparation for quick disposal of incriminating evidence. The immersion of the paper suggests that it may have contained recordings of bets which were dissolved before seizure."
The testimony regarding the presence of water-soluble paper slips and the presence of half bets thereon created "the suspicion, indeed the probability" that this basement was used for a gambling purpose. People v. Galan, supra, at 100.
At the preliminary hearing, Officer Martin testified that while he was present in the basement apartment he answered the phone four times and received bets on each occasion. Defendants contend that judicial consideration of that testimony was barred by the stipulation that only the non-hearsay evidence of the preliminary hearing would constitute trial evidence. It is their position that the above testimony was necessarily based on hearsay and that despite a failure to object when the testimony was first introduced, the stipulation precluded its later admission. Defendants are overly presumptive in their unsupported conclusion *270 that the testimony that "bets were taken" is necessarily based on hearsay. The evidentiary issue they raise requires a close analysis of the basis of the hearsay rule.
 5 In People v. Carpenter (1963), 28 Ill.2d 116, 121, 190 N.E.2d 738, our Supreme Court adopted the traditional definition of hearsay evidence:
"`Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' (McCormick, Law of Evidence, sec. 225; see also, Cleary, Handbook of Illinois Evidence, sec. 31.1 et seq.)"
 6 It is fundamental that extra-judicial statements become hearsay only when they are "assertions" and only when they are offered for the purpose of proving the truth of the matter asserted. It is impossible to determine from the record whether the telephone messages conveyed to Officer Martin were in fact "assertions." There is only the unchallenged conclusion that "bets were received," a distillation of four separate conversations. It is less difficult to perceive the purpose for which this testimony was offered. The conclusion that "bets were received" was offered to show the manner in which this telephone was used; that it was used for gambling purposes. Nowhere in the record is there an attempt to prove the veracity of the callers' statements.
 7 The hearsay rule exists in recognition of the value of unhampered cross-examination as a truth seeking device. (Wigmore on Evidence, 3rd ed., sec. 1362; People v. Carpenter, supra, at 121.) The source of the only assertion presented by the record, Officer Martin, was present in court, testified under oath as to what he heard and was subject to cross-examination with reference thereto. We do not believe that defendants were in any manner hindered in their cross-examination by their inability to confront the callers regarding the substance of the telephone conversations. A contrary conclusion would be warranted only if the testimony had related a caller's assertion that 219 West 23rd Street was used for gambling purposes.
 8 We hold that the testimony by a police officer that bets were received by him by means of a telephone upon defendants' premises was not hearsay evidence and consequently was unaffected by the stipulation of counsel. Our position finds considerable support in other jurisdictions as well as in the Seventh Circuit Court of Appeals. United States v. Pasha (7th Cir.1964), 332 F.2d 193; People v. King (1956), 140 Cal. App.2d 1, 294 P.2d 972; Commonwealth v. Tselepis (1962), 198 Pa. Super. 449, 181 A.2d 710; State v. Masco (1968), 103 N.J. Super. 277, 247 A.2d 136; State *271 v. Masse (1968), 5 Conn. Cir. 557, 258 A.2d 316; Liberto v. State (1970), 248 Ark. 350, 451 S.W.2d 464; Annot. (1950), 13 A.L.R.2d 1411.
 9, 10 In a bench trial in a criminal case, the determination of the credibility of the witnesses and the weight to be given their testimony is committed to the trial judge. We should not disturb his findings unless is committed to the trial judge. We should not disturb his findings unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendants' guilt. People v. Guyton (1969), 114 Ill. App.2d 394, 252 N.E.2d 665; People v. Smith (1964), 50 Ill. App.2d 361, 200 N.E.2d 748. Based on the uncontradicted testimony of Officer Martin regarding the water-soluble paper slips and the phoned bets, the court below concluded that the basement in which defendants were arrested was used for the purpose of gambling. The evidence was not so unsatisfactory, improbable or implausible as to warrant disturbing that finding.
 11 Defendants' final argument stems from the following statement by the trial judge, spoken during colloquy with counsel:
"I am aware of the fact a gambler never rents or leases the property in his own name. He leases it in somebody else's name or has somebody else lease it for him."
Defendants contend that this conclusion "was crucial to the Court's finding of occupancy or control of the premises," and that the trial judge "based his judgment, at least in substantial part, on it." Despite defendants' insistence, we find nothing to justify acceptance of their assumption that the trial judge relied on matters outside the record in reaching his decision. His only allusion to the reason for his finding was unrevealing:
"THE COURT: I think it has been established that it is a gambling place, and I think it has been established defendants had sufficient control over the property, over the place, that they were keepers."
Furthermore, the record contains other competent evidence bearing on the issue of "control." As previously noted, the testimony presented was adequate to sustain the trial judge's holding regarding this element. We affirm the judgment.
Judgment affirmed.
LEIGHTON, P.J., and SCHWARTZ, J., concur.
NOTES
[*] Ill. Rev. Stat. 1969, ch. 38, par. 28-3

This statute provides, in part: "* * * Any person who knowingly permits any premises or property owned or occupied by him or under his control to be used as a gambling place shall be fined not to exceed $500 * * *."