THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICHOLAS CASAS, Defendant-Appellant.

First District (5th Division)   No. 1—89—2121

Opinion filed May 1, 1992.

Larry Axelrood and Stuart B. Dubin, Ltd., & Associates, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Walter P. Hehner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Following a bench trial, defendant Nicholas Casas was convicted of two counts of possession of more than 15 grams of a controlled substance with intent to deliver and sentenced to concurrent terms of 10 years' imprisonment. The issues on appeal are: (1) whether the State proved beyond a reasonable doubt that defendant was guilty of possession of a controlled substance with intent to deliver; (2) whether the trial court erred when it denied defendant's request for a *Franks* hearing (*Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674); and (3) whether the trial court erred in allowing the admission of hearsay testimony.

The relevant facts are as follows. Chicago police officer Brad Williams testified that at approximately 10 p.m. on February 23, 1988, he helped to execute a search warrant in the rear apartment at 378 East Kensington in Chicago, Illinois. The search warrant authorized the search of "a male white hispanic known as Nick." Officer Williams described the building as a boarded-up, "mom and pop" grocery store in front and an apartment in the rear. The main entrance to the apartment was in the rear of the building, but a side entrance also led to the apartment. The store in the front was not used, and its front door was boarded up.

Officer Williams testified that he entered the building's side door, which led him to the apartment's kitchen. After an Hispanic female

let him enter the apartment, he noticed defendant leaning on the kitchen wall next to the rear bedroom doorway. When Officer Williams searched the rear bedroom, he discovered a scale, bagging materials and an automatic weapon in a dresser. He discovered cocaine and heroin in two separate thermos jugs in a plastic bag hanging on a nail on the closet doorjamb. He found a revolver in a crib in the bedroom. There were adult male and female clothes in the bedroom closet, on the closet door and strewn throughout the rear bedroom. He also discovered money. In the front room were two teenagers and three or four toddlers.

Defendant was then arrested. He took a coat hanging on the doorknob in the rear bedroom. The thermoses were discovered approximately two feet from where defendant retrieved his coat.

On cross-examination, Officer Williams testified that the search warrant described Nick as approximately 27 years old, 6 feet 0 inches tall, 165 pounds, and curly hair. When he asked who "Nick" was, the defendant said that he was "Nick." None of the evidence was dusted for fingerprints. Defendant's hair was straight at trial but was not straight on the day of his arrest. The parties stipulated that defendant was 38 years old on the day of his arrest. Officer Williams admitted that he had not taken any of the clothing found in the rear bedroom apartment and that he did not find any proof of defendant's residency.

Officer Williams testified that there was a door that connected the rear apartment to the storefront. He stated that in the storefront he saw a bed and a chair. Officer Williams testified the officers could not enter the front of the building because it was boarded up. He could not remember hearing the name Ignacio Aguirre during the investigation.

Chicago police officer June Evans testified that she helped execute the search warrant on the night in question. She initially watched the back door and then entered through the building's side door. When she entered the kitchen, she saw defendant being searched by Officer Williams.

Officer Evans then entered the vacant storefront. Two boards were nailed across the front door to prevent entry from the outside. The door to the store opened into the kitchen, and she did not recall seeing any locks on the store side of the door. Officer Evans testified that there was a door in the storefront that led down to the basement, but there was no door leading from the basement to the outside. The only way to get out of the storefront was to go into the rear apartment. In the old store was a bed, clothing rack, stereo, small

desk with books and papers and a couch. The store did not contain a kitchen, bathroom or running water. Officer Evans testified that the bed in the storefront was a single bed. The books were school books. The clothing was that which a male teenager would wear. The tapes were the kind teenagers would have, and Officer Evans recognized "Journey" but did not recognize the others.

When Officer Evans was getting a drink of water in the kitchen, there was a knock at the door. When she asked who it was, a male voice responded, "I am looking for Nick." On cross-examination, Officer Evans testified she wrote down the names of the people who knocked on the door, but she lost the paper. Officer Evans testified that these people were present during a portion of the search but no one else took their names. The State stipulated that no reference to these people appeared in the police report.

The defense presented the testimony of Gustavo Bautista, who testified that he was 14 years old and lived in the rear apartment at the time of the search. He lived there with his mother, Maria, his brothers, Hortencio, Armando, and Roberto, his sister, Veronica, and his uncle, Ignacio Aguirre. Gustavo testified that defendant was a friend of the family and that defendant did not live with them, but defendant did live in the storefront apartment. Defendant used only the bathroom in the rear apartment. Gustavo testified that Ignacio Aguirre was 23 years old, had curly hair, and was taller than defendant. On the date of trial Ignacio was in Mexico because he did not want to go to jail on a drug charge in Will County.

Gustavo testified that he slept in the rear bedroom with his brother, Hortencio and his uncle, Ignacio. His other brothers and sister slept with his mother in the front bedroom. Gustavo testified that on the day in question, after the police entered the apartment, they started searching and asking him where "Nick" was. Gustavo said Nick was not present and did not live there. Gustavo then heard defendant, Maria, and Armando come in from the grocery store. Defendant was arrested. Ignacio was not home at the time and did not come home that night. Ignacio's nickname was "Nacho."

On cross-examination, Gustavo testified that defendant kept the door to the front apartment locked and defendant did not have easy access to the rear apartment. Defendant did not have a kitchen, bathroom, or running water in his apartment. Gustavo's mother never cooked for defendant, and defendant could not get to the rear apartment from the basement. Defendant would have to knock on the apartment door when he needed to use the bathroom and he would have to leave if no one was home. Gustavo testified that although

defendant was out shopping with Maria when the police arrived, that was the first time defendant went shopping with Maria. Defendant never helped pay for rent or for food. Defendant never ate in the rear apartment.

Gustavo testified that he and his brother owned a "Journey" tape. He also testified that there were two functioning doors in defendant's front apartment. He never played any of his "Journey" tapes in Nick's front apartment and he did not have a tape player at Nick's front apartment. Gustavo also testified that he would occasionally see Nick use the front door to the front apartment and that the only adult male living in the rear apartment was Ignacio.

Seventeen-year-old Hortencio Al Bautista's testimony as to defendant's arrest was virtually identical to that of Gustavo. Hortencio also testified that only Ignacio kept personal belongings in the rear apartment. Defendant did not have curly hair, but Ignacio did. Ignacio left the apartment during the morning of the day the police came and left the thermoses behind. The door to the storefront was locked and defendant could not enter the rear apartment without permission. To go to the bathroom, defendant would have to knock on the door. When defendant had to urinate, he would do so in his apartment or go to the basement. There was no bathroom in the basement but there was a drainage system.

Hortencio slept in the same bed with Gustavo and Ignacio, but he never saw Ignacio with the scale and he did not know if Ignacio had the thermoses the day before the police searched the apartment. Armando Bautista also corroborated the testimony of Gustavo and Hortencio.

The parties stipulated that Ignacio Aguirre had a possession with intent to deliver charge pending in Will County. A bond forfeiture warrant was issued in that case, and the Will County State's Attorney's office had a copy of a deportation order from the United States Department of Immigration and Naturalization.

It was also stipulated that further investigation showed that defendant was not listed on the phone, gas or electric bills for the rear apartment at 378 East Kensington.

The first issue raised by defendant on appeal is whether the State proved beyond a reasonable doubt that defendant had constructive possession of the seized narcotics. To obtain a conviction for unlawful possession of a controlled substance, the State must prove that defendant had knowledge of the drug and that it was in his immediate and exclusive control. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) Possession may be established by evidence of actual pos-

session or constructive possession. (*People v. Scott* (1987), 152 Ill. App. 3d 868, 505 N.E.2d 42.) Constructive possession may be proved by showing that the defendant controlled the premises where the narcotics were found. (*People v. Morrison* (1988), 178 Ill. App. 3d 76, 532 N.E.2d 1077.) Whether the defendant had knowledge and possession are questions for the trier of fact and will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt as to the defendant's guilt. *People v. Gallagher* (1990), 193 Ill. App. 3d 566, 550 N.E.2d 255.

Defendant claims the instant case is virtually identical to *People v. Pugh* (1967), 36 Ill. 2d 435, 223 N.E.2d 115, wherein the police executed a search warrant for the premises in question and found defendant in shorts and a T-shirt under blankets in bed. They also found narcotics hidden behind a wall molding in the bedroom. Defendant testified that he did not live in the apartment and that he had no knowledge of the presence of narcotics. The court found that constructive possession was not proved beyond a reasonable doubt since there was no evidence that defendant rented or lived in the apartment, his personal effects were not found in the apartment and there was no evidence that he had any clothes in the apartment other than those he put on when he left with the officers.

■ Like the defendant in *Pugh*, defendant here was present in the rear apartment when the police arrived and he was in close proximity to the narcotics. However, in the instant case there is additional proof of defendant's control of the premises which was not present in *Pugh*. It is undisputed that defendant lived at 378 East Kensington. The disputed fact at trial was whether defendant lived in the abandoned storefront or the rear apartment. The trial court found that "the facts in this case indicate that no one was living isolated and confined to this room close to the front, the room that used to be part of the store." It was not unreasonable for the trial court to reach this conclusion in light of the fact that the storefront had no access to the outside, no kitchen or bathroom, and there was no evidence present in the storefront to suggest that an adult was actually living there. The evidence instead proves beyond a reasonable doubt that defendant lived in the rear apartment. Most significant is the fact that during the search, two people knocked on the door of the rear apartment and said that they were looking for Nick. The record further reveals that after defendant was arrested, he entered the rear bedroom and took his jacket off the bedroom's doorknob which was approximately two feet from where the narcotics were found. In addition, men's clothing

was found in the rear bedroom. Also, a defense witness testified that the reason defendant was not home when the police arrived at the apartment was because he was out buying groceries with Maria. Therefore, we agree with the trial court that the State proved beyond a reasonable doubt that defendant controlled the premises in question and therefore had constructive possession of the narcotics found on the premises.

Defendant next maintains that the trial court erred when it denied defendant's request for a hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, because defendant failed to establish that he had a legitimate expectation of privacy in the searched apartment or a possessory interest in the seized evidence. Formerly the rule was that a defendant accused of a crime in which possession was an element was granted "automatic standing" to challenge a search or seizure allegedly made in violation of the defendant's fourth amendment rights. (*Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725.) In *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, the Court found this standard to be too broad and instead stated that in a motion to suppress evidence illegally seized in violation of a defendant's fourth amendment rights, the defendant must show he had a legitimate expectation of privacy in the area searched. According to this rule, a defendant who completely denies any interest in the seized material does not have standing to argue suppression of the evidence. (*People v. Morrison* (1988), 178 Ill. App. 3d 76, 532 N.E.2d 1077; *People v. Dowery* (1988), 174 Ill. App. 3d 239, 528 N.E.2d 214.) Furthermore, under the current standing rules, the State may contend that defendant possessed an illegal substance in a place where the defendant did not have a legal expectation of privacy. Defendant's admissions at hearings on motions to suppress evidence are not admissible at trial. (*United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547.) With the right of defendant to testify at a suppression hearing without jeopardizing his defense at trial, "a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation without legal contradiction." *Salvucci*, 448 U.S. at 90, 65 L. Ed. 2d at 627, 100 S. Ct. at 2552.

■ While none of the above-mentioned cases address whether it is proper for the State to argue possession while also arguing that defendant had no standing to raise a *Franks* issue (see *Franks*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674), this issue was recently addressed by the Fourth District Appellate Court in *People v. Bond*

(1990), 205 Ill. App. 3d 515, 563 N.E.2d 1107. The defendant in *Bond* was convicted of possession of a controlled substance with intent to deliver after he was discovered in an apartment that the police searched pursuant to a warrant. The search warrant was issued for defendant's person and the apartment. The warrant was based on the sworn statement of a police officer and informant implicating defendant in drug trafficking from the apartment. The court held that the defendant could not attack the affiant's veracity because he did not establish standing to challenge the search of the apartment. The court reasoned:

> "[N]ot every aggrieved defendant may seek to exclude evidence obtained allegedly in violation of the fourth amendment because that amendment's constitutional safeguards are personal protections that may not be vicariously asserted.
>
> * * *
>
> In the present case, defendant has repeatedly asserted that he has no interest in or connection with the residence that was searched. Without a legitimate interest in the residence searched, defendant cannot challenge the sufficiency of the search warrant [citation] and accordingly, has no standing to assert a *Franks* hearing." (*Bond*, 205 Ill. App. 3d at 518, 563 N.E.2d at 1109.)

We follow the holding in *Bond* that the State may argue that defendant had control over the premises where the narcotics were found, but had no legitimate expectation of privacy in the residence searched and therefore had no standing to challenge the sufficiency of the search warrant.

■ Defendant's last contention is that the trial court improperly admitted hearsay evidence that two undisclosed persons knocked on the apartment door looking for Nick and were present during a portion of the search. The trial court ruled that the statement was not hearsay because the testimony was offered, not to prove that the defendant lived there, but to characterize the use of the rear apartment. The trial reached the proper conclusion in light of the fact that when an out-of-court statement is used, not as evidence of the fact asserted, but as circumstantial evidence for another purpose, it is not hearsay. *People v. Foster* (1990), 198 Ill. App. 3d 986, 556 N.E.2d 1214; *People v. Roti* (1971), 2 Ill. App. 3d 264, 276 N.E.2d 480 (Police officer's testimony that he answered the telephone during the search of defendant's house and "received bets" was not hearsay since it was offered to show the manner in which the telephone was used (for

gambling purposes) and not to prove the veracity of the caller's statements).

Accordingly, for the reasons set forth above, defendant's conviction is affirmed.

Affirmed.

LORENZ and GORDON, JJ., concur.