COMMONWEALTH *vs.* ROGER L. FRANKLIN
(and two companion cases between the same parties).

Middlesex.   October 6, 1970. — December 16, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, REARDON, & QUIRICO, JJ.

*Search and Seizure. Constitutional Law,* Search and seizure. *Practice, Criminal,* Trial of defendants together, Stipulation.

Notwithstanding a discrepancy, in criminal proceedings respecting possession of narcotic drugs, between testimony of a police officer who arrested the defendant as to the time at which the officer first entered the defendant's apartment, and testimony of a clerk of court who issued a search warrant therefor placing the time of its issuance between twenty-five and fifty-five minutes after the officer's entry into the apartment, other evidence, including testimony that another officer obtained the warrant and joined in the search with the arresting officer and other police, warranted a conclusion that the officers searched the apartment with the warrant. [420]

Sections 2, 2A, and 2B of G. L. c. 276, as amended or inserted by St. 1964, c. 557, §§ 2, 3, apply to all search warrants issued pursuant to statutes not mentioned in § 2C as well as to those issued pursuant to the statutes mentioned in § 2C. [421]

In criminal proceedings respecting possession of narcotic drugs, there was no merit in a contention by the defendant that a requirement of G. L. c. 94, § 213, that the complaint for a search warrant thereunder for narcotic drugs name the occupant of the premises to be searched,

---

applies to a search warrant for narcotic drugs issued under c. 276, §§ 1, 2, 2A, 2B, and 2C, as amended or inserted by St. 1964, c. 557, §§ 1–3; and a search warrant issued under the later statutes was not invalid in that the affidavit in support of the application therefor did not mention the defendant's name as the occupant. of the premises to be searched. [421–422]

Under applicable Federal and State constitutional precedents, an affidavit in support of an application for a search warrant under G. L. c. 276, §§ 2, 2A, 2B, and 2C, as amended or inserted by St. 1964, c. 557, §§ 2, 3, for narcotic drugs in an apartment of a certain number, reciting in some detail the substance of information the affiant had, "from a reliable informer who in the past . . . [had] given . . . [the affiant] information resulting in arrests and convictions," as to a transaction in a large quantity of marihuana which was due to take place the morning of the search, and containing a confirmation of substantially all the information so received, warranted a finding of probable cause for issuance of the warrant. [423]

A contention by the defendant in a criminal case that evidence obtained in a search of his apartment by police pursuant to a search warrant should be suppressed because of alleged illegality of his arrest on a street shortly before the search was without merit where there was no causal connection between the arrest and the search and the legality or illegality of the arrest was irrelevant. [423–424]

There was no merit in a contention by one of two defendants tried jointly for serious crimes that wiretap evidence of conversations, which were not introduced at the trial, required separate trials of the defendants. [424]

With respect to a stipulation by the defendant and the Commonwealth referring only to the trial of a pending criminal case, that no wiretap evidence should be used in the trial and that the trial should proceed "without reference" to G. L. c. 272, § 99, this court concluded that the parties intended that the stipulation should extend to an appeal from the defendant's conviction and that justice did not require removal of the stipulation. [425]

INDICTMENTS found and returned in the Superior Court on February 18, 1969.

Motions were heard by *Linscott, J.*, and the cases were tried before him.

*James D. Ragland* for the defendant.

*Terence M. Troyer*, Legal Assistant to the District Attorney, for the Commonwealth.

REARDON, J. The defendant was found guilty on two indictments charging unlawful possession of narcotic drugs (marihuana and LSD) and one charging unlawful possession of marihuana with intent to sell. He was tried in company

with one Paul B. Curley, who was indicted for and found guilty of unlawful possession of marihuana, unlawful possession of marihuana with intent to sell, and operation of a motor vehicle without authority during suspension of his license. The cases are here under G. L. c. 278, §§ 33A–33G. Prior to trial the defendant filed with respect to each indictment a motion to dismiss, a motion to sever his trial from that of Curley, and a motion to suppress evidence seized in his apartment on the day of his arrest. These motions were denied. During the trial, and also after the jury returned verdicts of guilty on all indictments, he filed motions for directed verdicts and for the entry of verdicts of not guilty, which were denied. He now assigns as error the denial of his various motions.

The facts are these. At 10:20 A.M., January 9, 1969, Officer Mario A. Rizzo of the Massachusetts State police received information from the Suffolk County District Attorney's office that a gray Jaguar bearing New Hampshire license plates and driven by one "Dave" was leaving Beacon Hill for apartment No. 511 at 888 Massachusetts Avenue in Cambridge, where the driver was to pick up a large quantity of marihuana. It is the defendant's contention that this information was based on a wiretap of the telephone of one Jerry Hafford during the period from December 18 through December 23, 1968, and from January 1 through January 9, 1969. Officer Rizzo and two other officers, Gianquitto and Towsey, left immediately for Cambridge. In the meantime Officer Alphonse T. Rheaume proceeded to the Third District Court of Eastern Middlesex where he prepared an affidavit in support of an application for a warrant to search apartment No. 511 at 888 Massachusetts Avenue, Cambridge, detailing the substance of information in his possession and further reciting that events substantially as described below had in fact transpired according to this information.[1]

---

[1] Although most of the affidavit was prepared before the officer knew the "tip" was accurate, it could not have been completed until the telephone confirmation of the succeeding events came through because it contained the number of the license plates of the gray Jaguar which appeared on the scene, a piece of information not known by the informant.

Shortly after Officers Rizzo, Gianquitto and Towsey arrived in an unmarked car in the proximity of the Massachusetts Avenue address and parked, they observed a gray Jaguar with New Hampshire license plates pull up opposite No. 888 Massachusetts Avenue. The driver, later identified as Curley, took two suitcases out of the trunk of the car and entered No. 888 Massachusetts Avenue, coming out five minutes later to look up and down the street. He reëntered the building, whereupon the defendant came out and made a motion toward the building. Curley then reappeared carrying two suitcases and a duffel bag, which he put in the trunk of the Jaguar. As he was driving away he was stopped by the police and arrested. The officers took the suitcases and duffel bag out of the trunk of the car and found that they contained what was subsequently determined to be thirty-one kilos of marihuana. Five or ten minutes later the defendant was observed walking along Massachusetts Avenue by Officer Rizzo, who ascertained from him his name and address and arrested him "for conspiracy." Records of the Cambridge police department show that the defendant's arrest took place at 11:15 A.M.

In the meantime, after Curley was removed to the police cruiser, a search was begun in apartment No. 511 at 888 Massachusetts Avenue. Officer Gianquitto testified that about four officers, including himself,[2] entered the apartment, and that he had a warrant with him. Officer Rizzo placed the time of his entrance into the apartment at five to ten minutes after the defendant's arrest. However, an assistant clerk of the Third District Court of Eastern Middlesex gave evidence that to the best of his recollection Officer Rheaume signed the affidavit and application for the warrant in his presence between 11:45 A.M. and 12:15 P.M. on January 9, after having been apprised by telephone of the events occurring at the site. In the apartment the officers found thirty-one kilos of marihuana in plastic-wrapped packages in a bathtub, as well as other drug paraphernalia and pills.

---

[2] The others were Officers Rizzo, Rheaume and Frechette.

The basic contentions of the defendant center, with one exception, on the search of the apartment.

1. His first contention is that the search was improper because it was conducted without a warrant. He relies on the fact that Officer Rizzo testified at the hearing on the motions that he went into the building five or ten minutes after the defendant's arrest, or between 11:20 and 11:25 A.M., whereas the clerk who issued the warrant testified that he issued it sometime between 11:45 A.M. and 12:15 P.M. However, this was not the only evidence on this subject. There was Officer Gianquitto's testimony, which came in at the trial before the defendant first raised this argument on a motion to dismiss, that he and the other officers entered the premises with a warrant. In addition, Officer Rheaume, who obtained the warrant, was one of the men who searched the apartment and there is no evidence that he arrived after the search had begun. Nor would it seem likely that a group of policemen, aware of the consequences of conducting a search without a warrant, who had taken precautions to assure that one would be issued as soon as their tip was authenticated, and who were not faced with any emergency situation requiring immediate action, would nonetheless search the apartment without waiting for the arrival of the warrant.

The defendant's argument is based on the discrepancy in time between the estimates given by Officer Rizzo on when he first entered the apartment and by the clerk on when he issued the warrant. However, each estimate could easily be off by a number of minutes, which would account for the discrepancy in time to which the defendant calls our attention. In view of the strength of the prosecution's evidence directly on this issue, and the fact that the burden was on the defendant to prove that there was no warrant and that the evidence was therefore illegally seized (*Commonwealth* v. *O'Brien*, 305 Mass. 393, 400, *Commonwealth* v. *Fancy*, 349 Mass. 196, 202, *Commonwealth* v. *Mitchell*, 350 Mass. 459, 464, *Commonwealth* v. *Coco*, 354 Mass. 78, 79), the defendant's contention was properly rejected. All the evidence points to carefully planned and executed police work carried

out properly in accordance with the mandates of G. L. c. 276.

2. The defendant further argues that the search was illegal because of the insufficiency of the affidavit supporting the warrant. He relies on G. L. c. 94, § 213, which authorizes the issuance of a warrant to search for narcotics upon a complaint that "any narcotic drug . . . is kept or deposited *by a person named therein*" (emphasis supplied). It is his argument that all warrants for narcotics must comply with this statute rather than the general provisions of G. L. c. 276, §§ 1, 2, 2A, 2B, and 2C, and that since this affidavit in no way mentions the defendant's name as the occupant of the premises to be searched it is inadequate.

This argument is ingenious but not persuasive. The affidavit does not purport to be drawn under G. L. c. 94, § 213, but rather under the foregoing sections of c. 276. Those sections as they now stand came substantially into being by St. 1964, c. 557, following *Aguilar* v. *Texas,* 378 U. S. 108. The purpose of the Legislature was to incorporate as statutory requirements for affidavits those features which the court held in the *Aguilar* case to be constitutional requirements. Section 2C states that warrants issued pursuant to certain other provisions, including c. 94, § 213, must be issued as provided in G. L. c. 276, §§ 2, 2A, and 2B, "in so far as they are applicable." Since it states no more than what is constitutionally required, it is clear that the above sections of c. 276, are applicable to all warrants, including those brought under provisions not mentioned in § 2C. See *Commonwealth* v. *Pope,* 354 Mass. 625, 627 (c. 276, § 2B, applicable to warrants brought under c. 271, § 23).

However, the converse proposition — that the requirements of G. L. c. 94, § 213, apply across the board to all warrants issued in narcotics cases — is not sound. General Laws c. 94, § 213, was enacted well before the 1964 amendments of c. 276. It authorizes a warrant to issue on the mere statement by the affiant "that he has reason to believe that any narcotic drug . . . is kept . . . ." Prior to 1964 it was employed in precisely this fashion. *Commonwealth* v.

*Mitchell,* 350 Mass. 459. The requirement that a person be named is only reasonable when no statement of underlying facts or circumstances is required. However, it would be highly unreasonable, and certainly not in accord with the intention of the Legislature, to carry over the requirement that a person be named in all narcotics warrants when persons who might be incriminated as the result of a search are already well protected by the stringent requirements for affidavits now set forth in G. L. c. 276 and in the case law. The lack of wisdom of such an approach is apparent in just such a case as this where the information of the police, and hence their knowledge, develops around and ultimately focuses on a place rather than upon the person occupying the place.

3. The defendant also presses a second constitutional argument as to the insufficiency of the affidavit, relying again on the fact that the defendant is not mentioned therein. However, this argument mistakes the focus of the affidavit. The defendant's indictment and conviction as the result of evidence seized in the search of the apartment pursuant to the warrant should not obscure the fact that the affidavit sought a warrant to search the *premises* only, regardless of who lived there.[3] The Commonwealth had the burden of establishing at the trial that there was a connection between the defendant and the bathtub full of marihuana but it was not the Commonwealth's duty to demonstrate this connection in the affidavit.[4]

Both the Fourth Amendment to the Constitution of the United States and art. 14 of the Massachusetts Declaration of Rights distinguish between persons and things as the objects of search and seizure. The Fourth Amendment requires that warrants "particularly . . . [describe] *the place to be searched,* and the persons *or* things to be seized" (emphasis supplied). Article 14 of the Massachusetts Declara-

---

[3] The warrant which issued authorized search of the premises and "any person present who may be found to have such property in his possession or under his control or to whom such property may have been delivered." This is certainly a reasonable extension of the request to search the premises.

[4] It is noteworthy that the other lessee of the apartment was not charged in any way as a result of the search.

tion of Rights states that "the order in the warrant . . . to make search in suspected places, *or* to arrest one or more suspected persons, *or* to seize their property . . . [must be] accompanied with a special designation of the persons *or* objects of search, arrest, or seizure" (emphasis supplied). Thus this warrant to search apartment No. 511 at 888 Massachusetts Avenue must be tested only on whether the affidavit established probable cause to search that apartment.

Under this test there can be no doubt that under the applicable Federal and State precedents this affidavit contained sufficient information from which to conclude that there probably was a large quantity of drugs in apartment No. 511 at 888 Massachusetts Avenue. The affidavit recites in some detail the substance of the information the police had "from a reliable informer who in the past has given . . . [the affiant] information resulting in arrests and convictions," as to a transaction in a large quantity of marihuana which was due to take place the morning of the search. It contained further a confirmation of every detail of the information received except the fact that the marihuana had been taken out of apartment No. 511 rather than another one. This independent corroboration was more than adequate to establish the reliability of the information as to the apartment number and to warrant a finding of probable cause. *Commonwealth* v. *Von Utter*, 355 Mass. 597. *Draper* v. *United States*, 358 U. S. 307. See *Spinelli* v. *United States*, 393 U. S. 410, 417–418. It is irrelevant that most of the affidavit was actually prepared before the officers had confirmed the information;[5] it was completed and signed only after Officer Rheaume received a call that the "stake out" had gone according to plan.

4. The defendant's final argument with respect to the search is that evidence seized therefrom should have been suppressed because the search was a product of his illegal

---

[5] This could explain the fact that the affidavit states a "subject named Dave" was arrested when in fact it was Curley who was arrested. The tip was to that extent erroneous, in identifying who would pick up the marihuana. In fact, Curley was not positively identified as Curley until a day or so after his arrest.

arrest.  This argument fails because there is no causal connection between his arrest and the search.  The search of apartment No. 511 was undertaken, pursuant to a warrant, because the officers had previously ascertained that a large quantity of drugs was likely to be found there.  The officers clearly did not go to apartment No. 511 simply because the defendant told them at the time of his arrest that he lived there.  They would have gone there in any event.

In the light of this lack of causal connection, the legality or illegality of the defendant's arrest is irrelevant since it was not productive of evidence used against him at his trial. We do not, therefore, decide this point.  We note only that it is at least arguable from the record that Officer Rizzo could reasonably have believed the defendant guilty of a felony at the time he arrested him.

5. The defendant's argument that his motions to dismiss and to direct verdicts in his favor should have been allowed is premised on the assumption that the drugs and other paraphernalia in the apartment were illegally seized.  Since this premise is unsound for the reasons outlined above, the argument fails.  We need not discuss whether the motions to dismiss would fail in any event because of the rule stated in *Commonwealth* v. *Galvin*, 323 Mass. 205, 211–212.

6. The defendant's final ground for appeal is that the judge erred in denying his motion to sever his trial from that of Curley.  This argument, based on the defendant's assumption that a wiretap conducted by the Suffolk County District Attorney's office produced the "information" which led to the warrant and the arrest of the defendant and Curley, has no merit.  Even if the defendant's assumption is correct, no conversations from the wiretap were introduced at trial and it could not have been directly prejudicial to either the defendant or Curley.  Nor is it clear why the presence of the wiretap evidence, even if it was illegally obtained,[6] should constitute grounds for severance.

---

[6] In his motions to suppress, the defendant alleged that the wiretap was improper.  The wiretap was not mentioned in his motions to sever, nor in the hearing on the motions.  In his brief the defendant does not now allege the wiretap was illegal.

Finally, it should be noted that the defendant entered into a stipulation with the Commonwealth before trial that no evidence from the wiretap was to be used in the trial and that the trial was to proceed "without reference to Chapter 272, Section 99" (governing the issuance of warrants authorizing wiretaps). Although the stipulation refers only to the trial and not an appeal, it is reasonable to conclude that the waiver of an argument at trial was meant by the parties to extend to an appeal. A stipulation is normally binding on the parties and removable only by action of the court where it is clear that its presence is not conducive to justice. *Loring* v. *Mercier*, 318 Mass. 599. *Kalika* v. *Munro*, 323 Mass. 542. It does not appear that the court resorted to any such action in this instance, nor is it necessary now.

*Judgments affirmed.*