COMMONWEALTH *vs.* HENRY SMITH.

Suffolk.    February 3, 1976. — May 24, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Search and Seizure.    Probable Cause.    Arrest.    Constitutional Law,* Search and seizure.

An affidavit in support of a warrant to search certain premises and any person present thereon, which stated that a reliable informant had been present on two recent occasions in a certain apartment where he observed sales of heroin and that the affiant and other officers, upon surveillances of the apartment, had observed persons

known to traffic in heroin enter and leave the apartment, was sufficient to justify a search of one present in the apartment since it was impossible to predict who would be in the apartment at any given time and it was probable that any person in the apartment was a participant in the illegal transactions there. [339-344] KAPLAN, J., dissenting.

Discussion of underlying circumstances which must be presented in an affidavit to support a warrant authorizing the search of "any person present." [339-346]

INDICTMENT found and returned in the Superior Court on February 12, 1974.

The case was heard by *McLaughlin*, C.J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Fern L. Nesson* for the defendant.

*D. Lloyd Macdonald*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.    The defendant was indicted for possession of a class A controlled substance (heroin), see G. L. c. 94C, § 31, with intent to distribute. He was convicted of the lesser included offense of possession of a class A controlled substance after a jury waived trial in the Superior Court. He received a sentence of imprisonment for one year in a house of correction, the execution of which was stayed pending this appeal. We conclude that there was no error.

The basis of the defendant's appeal is the denial of his motion to suppress the heroin found on his person by a police officer executing a search warrant for heroin at apartment number 549, 19 Corregidor Court, Roxbury. The warrant was issued on the printed form prescribed by G. L. c. 276, § 2A, and commanded the police to search the apartment, to search one "Jane Doe, alias Molly Bee" (a known occupant of the apartment), and "any person present who may be found to have ... [heroin] in his possession or under his control or to whom such property may have been delivered ...."

At the hearing on the defendant's motion to suppress, the judge received in evidence the warrant together with

the application for the warrant and a supporting affidavit by one of the investigators. The affidavit read as follows: "I, Gerald Dailey, being duly sworn, depose and say: 1. I am a Boston police officer assigned to the Drug Control Unit. 2. I have information based upon ... a reliable informant who has proven reliable in the past by furnishing information leading to the arrest and conviction of Sandra Sylvia and Patricia Jones both of whom have been arrested and convicted in the Boston Municipal Court for Possession of Heroin. My informant now tells me that on at least two occasions within the past ten days [he] was present at 19 Corregidor Court apt #549, Roxbury. On the above mentioned visits, [he] observed the occupant of said apartment one Molly-Bee sell heroin in half bundles (12 decks) in the amount of $75.00 on one occasion and $85.00 on the other occasion. As a result of these disclosures myself and other officers of the Drug Control Unit conducted periodic surveil[l]ances of the above location during the past week and observed persons known to myself and other members of the Drug Control Unit, who traffic in Heroin, enter and leave said apartment. 3. Based upon the foregoing reliable information — and upon my personal knowledge and belief — and attached affidavits — there is probable cause to believe that the property hereinafter described ... is being concealed, etc. and may be found in the possession of Jane Doe aka Molly Bee (colored female, five feet nine inches tall, thin build thirty years of age) at premises 19 Corregidor Court ... apt #549 Roxbury. 4. The property for which I seek the issuance of a search warrant is the following .... [C]ontrolled substance heroin and material used in the cutting, bagging and distribution of Heroin."

In the execution of the warrant, officers attached to the drug control unit obtained entry into the apartment without incident. The defendant was standing in an area of the apartment where the main room and the kitchenette joined. One of the officers approached the defendant, identified himself as a police officer with a search warrant, and told the defendant to raise his hands. The officer "patted down" the defendant but found nothing. The officer then searched

Commonwealth *v.* Smith.

the defendant, and found twenty-four decks of what proved to be heroin, bound by an elastic band, in the defendant's pants pocket. The defendant was placed under arrest.

The judge found that the searching officer had no probable cause to arrest the defendant until after the search of his person had been accomplished.[1] Nevertheless, reading the affidavit and search warrant together,[2] and considering the reasonable inferences to be drawn therefrom, the judge found that, in all the circumstances, it could reasonably be believed that any person found in the apartment was involved in the trafficking of drugs and was present solely for that illicit purpose.[3] The search of the defendant's person under the warrant thus was upheld and the heroin was allowed in evidence at trial.

The Commonwealth does not attempt to rely on any asserted privilege of the police to search the defendant to protect themselves against the possibility that the defendant possessed a concealed weapon. It could be said that this would not be an unreasonable argument to make in light of the nature of the place, people and circumstances involved. Such an argument loses strength here, however, considering that a "pat down" of the defendant disclosed no sign of a weapon, and also did not disclose the contraband. More important, it is clear that the police from the beginning relied on the terms of the warrant, apparently planned to search anyone present for drugs, and apparently did not act with the motive of self-protection. See *Gustafson* v. *Florida,* 414 U.S. 260, 263 (1973); *United States* v. *Robinson,* 414 U.S. 218, 234-236 (1973); *Adams* v. *Wil-*

---

[1] This finding may appear to be inconsistent with other findings which the judge made in support of the search of the defendant's person, and therefore we regard this finding, we think correctly, as a conclusion by the judge that there were no facts supportive of probable cause, as to the defendant, except his presence in the apartment.

[2] See *Commonwealth* v. *Todisco,* 363 Mass. 445, 449-450 (1973).

[3] In determining the correctness of the judge's ruling, we consider, of course, only the warrant, application and affidavit and the reasonable inferences arising therefrom. See, e.g., *Commonwealth* v. *Mele,* 358 Mass. 225, 228-229 (1970); *Commonwealth* v. *Cuddy,* 353 Mass. 305, 308 (1967); *Commonwealth* v. *Moran,* 353 Mass. 166, 169-171 (1967).

*liams,* 407 U.S. 143, 146 (1972); *Chimel* v. *California,* 395 U.S. 752, 763 (1969); *Terry* v. *Ohio,* 392 U.S. 1, 23-24 (1968).

The defendant contends that the search of his person pursuant to the "any person present" language of the warrant violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and art. 14 of the Declaration of Rights of the Constitution of this Commonwealth. He asserts that there was no showing to a person authorized to issue the warrant of probable cause to believe that the defendant would be present on the premises to be searched and that he would be involved in illegal narcotic transactions. Additionally, the defendant says that the warrant here lacked specificity in that it did not particularly describe the person of the defendant as an object of the search.

We conclude that, in the circumstances of this case, there was no error in the judge's denial of the motion to suppress. The affidavit and the warrant amply demonstrated that, in all the circumstances, there was probable cause to believe that any person present on the premises described in the search warrant was involved in illegal trafficking in heroin. While we do not mean to derogate in any way from the principle that the law requires a particular description of the persons to be searched pursuant to a warrant, we think that, on the facts of this case, the defendant was sufficiently described. It is clear from our discussion below that only in special circumstances such as those shown in the affidavit here will a search warrant aimed principally at the premises also be held to include validly the search of any person present.

There is no general agreement in either holding or reasoning among the courts which have considered whether the search of any person present pursuant to a valid premises search warrant is a reasonable search under the Fourth Amendment. Most decisions evidence a disposition to strike down such searches,[4] reflecting an adherence to the dicta

[4] *United States* v. *Johnson,* 475 F.2d 977, 979 n.5 (D.C. Cir. 1973). *United States* v. *Festa,* 192 F. Supp. 160, 163 (D. Mass. 1960). *State* v.

of the United States Supreme Court in *United States* v. *DiRe,* 332 U.S. 581 (1948), where the court invalidated the warrantless search of an automobile passenger whose only connection with the offense of selling counterfeit ration coupons was his presence in the automobile at the time a quantity of counterfeit coupons was transferred to a government agent by the driver of the car. The government and the court assumed that the police could not justify the search of a person found on premises where illegal activity was taking place based solely on such presence. *Id.* at 587. See *United States* v. *Micheli,* 487 F.2d 429, 433-434 (1st Cir. 1973) (Campbell, J., concurring). On the other hand, some decisions have upheld such searches.[5] Commentary from within the legal community is sparse and, essentially, looks on searches of this nature as of dubious constitutionality. See, e.g., Mascolo, Specificity Requirements for Warrants under the Fourth Amendment: Defining the Zone of Privacy, 73 Dick. L. Rev. 1, 19-20 (1968); Comment,

---

*Wise,* 284 A.2d 292, 293-294 (Del. Super. Ct. 1971). *Salmon* v. *State,* 2 Md. App. 513, 520 n.4 (1967). *State* v. *Masco,* 103 N.J. Super. 277, 282 (App. Div. 1968). *People* v. *Nieves,* 36 N.Y.2d 396, 398-404 (1975). *Garrett* v. *State,* 270 P.2d 1101, 1103 (Okla. Crim. App. 1954). *Cross-land* v. *State,* 266 P.2d 649, 652 (Okla. Crim. App. 1954). *State* v. *Massie,* 95 W. Va. 233, 235 (1923). See *United States* v. *Micheli,* 487 F.2d 429, 431 & n.1, 433 (1st Cir. 1973); *United States* v. *Haywood,* 284 F. Supp. 245, 250 (E.D. La. 1968); *Fowler* v. *State,* 128 Ga. App. 501, 502-503, cert. denied, 414 U.S. 1000 (1973); *State* v. *Nabarro,* 55 Hawaii 583, 589 (1974); *Purkey* v. *Maby,* 33 Idaho 281 (1920); *People* v. *Staes,* 92 Ill. App. 2d 156, 160, 163 (1968); *DeAngelo* v. *State,* 199 Md. 48, 51 (1952); *State* v. *Fox,* 283 Minn. 176, 179 (1969); *State* v. *Bradbury,* 109 N.H. 105, 106-107 (1968); *State* v. *Carufel,* 106 R.I. 739, 748-749 (1970).

[5] *Samuel* v. *State,* 222 So.2d 3, 5 (Fla. 1969). *Willis* v. *State,* 122 Ga. App. 455, 458-459 (1970). *People* v. *Pugh,* 69 Ill. App. 2d 312, 316 (1966). *State* v. *DeSimone,* 60 N.J. 319 (1972). *People* v. *Easterbrook,* 43 App. Div. 2d 719, 720 (1973), aff'd, 35 N.Y.2d 913, cert. denied, 421 U.S. 965 (1974). *People* v. *Nicoletti,* 60 Misc. 2d 108, 111-112 (N.Y. Niagara County Ct. 1969). See *United States* v. *Peep,* 490 F.2d 903, 906 (8th Cir. 1974); *Walker* v. *United States,* 327 F.2d 597, 599-600 (D.C. Cir. 1963), cert. denied, 377 U.S. 956 (1964); *Clay* v. *United States,* 246 F.2d 298, 305 (5th Cir.), cert. denied, 355 U.S. 863 (1957); *Brown* v. *State,* 498 S.W.2d 343, 346 (Tex. Crim. App. 1973), and cases cited. See also *United States* v. *Johnson, supra* at 981 & n.5, 982 (Bazelon, C.J., concurring in part and dissenting in part); *People* v. *Nieves, supra* at 400-406.

The "Search all Persons" Power—Does Presence Really Equal Probable Cause? 58 Cornell L. Rev. 614, 618-619 (1973). But see LaFave, Search and Seizure: "The Course of True Law ... Has Not ... Run Smooth," 1966 U. Ill. L.F. 255, 271-273 (discussing Ill. Rev. Stat. c. 38, § 108-9 [1965]).

In Massachusetts this question has never been squarely presented for our determination until now, although on one occasion we termed an "any person present" clause in a premises search warrant "a reasonable extension of the request to search the premises,"[6] and, more recently, we have twice cast aspersions on the validity of these clauses in light of the constitutional requirement for specificity.[7]

The trial judge explicitly adopted the reasoning of the New Jersey Supreme Court in *State* v. *DeSimone,* 60 N.J. 319 (1972), in concluding that the search of the defendant in this case was valid. In *DeSimone* a unanimous court upheld the search of a passenger in an automobile under a warrant directing the search of the automobile and all persons found therein. *Id.* at 321. In disposing of the contention that the warrant was invalid as it related to a passenger in the automobile authorized to be searched, the *DeSimone* court employed an approach which required a showing of probable cause concerning the place to be searched and a reasonable belief that all persons found there would be participants in the criminal activity (an illegal lottery operation). *Id.* at 322-323. As the court said: "So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment." *Id.* at 322. The court stated that "there is none of the vice of a general warrant if the individual is ... identified by physical nexus to the on-going criminal event itself." *Ibid. DiRe* was distinguished because the New Jersey court viewed that deci-

---

[6] *Commonwealth* v. *Franklin,* 358 Mass. 416, 422 n.3 (1970).

[7] *Commonwealth* v. *Snow,* 363 Mass. 778, 786 n.5 (1973). *Commonwealth* v. *Pellier,* 362 Mass. 621, 625 n.3 (1972).

sion as turning on peculiar facts, i.e., no secretive meeting was involved and the substantive crime was one which did not necessarily involve any act which was visibly criminal (see *DiRe, supra* at 593). *DeSimone, supra* at 326-327.

A case somewhat closer to the instant one was decided in *People* v. *Nieves,* 36 N.Y.2d 396 (1975). In *Nieves* the search warrant authorized the search of a certain restaurant and cocktail lounge, the person of one Elizar Vidal, and "any other person occupying said premises[,] and of any other person who may be found to have ... [gambling paraphernalia] in his possession or under his control or to whom such property may have been delivered ...." *Id.* at 398. The Court of Appeals of New York, in a unanimous decision, set aside the defendant's conviction for, among other crimes, possession of gambling records, because neither the affidavit nor the warrant, nor the reasonable inferences which might be drawn from them by the issuing judge gave the slightest indication that there was reason to believe "that each and every occupant of ... [the premises] at any time of day possessed ... gambling records ...." *Id.* at 402. However, the New York court said quite clearly that the "any person present" language could, in some circumstances, survive constitutional attack.[8] The court pointed out that "[w]hat will amount to forbidden generality, or, to put it another way, insufficient particularity in a warrant necessarily depends upon the facts and circumstances of each case." *Ibid.*

We conclude that the search before us falls within that narrowly circumscribed range of searches which, because of the peculiar facts which give rise to them, are consistent with Fourth Amendment principles and with the reasoning of precedents such as *DeSimone* and *Nieves.* We have repeatedly stated that affidavits in support of search warrants

---

[8] Indeed, the decision expressly refused to overrule the New York statute authorizing the use of this language in search warrants. *Nieves, supra* at 400, 404. See N.Y. Crim. Proc. Law § 690.15(2) (McKinney 1971). Compare *People* v. *Green,* 33 N.Y.2d 496, 499-500 n.2 (1974), with *id.* at 501-502 (Gabrielli, J., joined by Jasen and Stevens, JJ., dissenting).

are to be approached, in hindsight, with a view toward common sense. They "should be read in their entirety, not in a hypertechnical fashion, and ... considerable latitude should be allowed for the drawing of reasonable inferences from their faces." *Commonwealth* v. *Perada,* 359 Mass. 147, 149 (1971), and cases cited. *United States* v. *Ventresca,* 380 U.S. 102, 108-109 (1965). After a full scrutiny of the affidavit we must be able to opine that "the information contained in the affidavit and 'inferences which reasonably could be drawn from the information by a judicial mind' establish probable cause to make the search." *Commonwealth* v. *Mele,* 358 Mass. 225, 229 (1970), quoting from *Commonwealth* v. *Brown,* 354 Mass. 337, 345 (1968).

The affidavit in support of the search warrant for apartment number 549 revealed to the issuing clerk that the informant on whose information the affiant relied had been *inside* the apartment on two occasions within only ten days prior to the signing of the affidavit and had seen the occupant selling heroin in half bundles (twelve decks) to other persons present in the apartment. The affidavit further showed that periodic surveillances of the apartment by the affiant and other police officers within only the prior seven days caused them to observe persons, known to the officers as persons trafficking in heroin, enter and leave the apartment. The local clerk undoubtedly inferred that, from the nature of the neighborhood and the project in which the apartment was located, the apartment was of modest size. All of these facts could properly be appraised by the clerk in light of the fact that the application sought authorization to search for the kind of contraband which, because of its nature and the type of packaging customarily used in its transfer from one individual to another, could reasonably be inferred would be discovered on the persons of those individuals present.[9] Further, the insidious nature of the

---

[9] See *Commonwealth* v. *Snow,* 363 Mass. 778, 788 (1973), where we observed: "An illegal drug transaction is commonly described by witnesses as including the passing of something between two persons, with a small packet, usually called a deck, going in one direction and money going in the other direction."

contraband (heroin) was such as to render it more likely than not that the participants would act in secret and to the exclusion of innocent persons and possible informants.

From these asserted facts and fair inferences drawn therefrom, it was permissible to conclude that it was probable that any person in the apartment was a participant in the trafficking in heroin there. Further the inference was permissible that it was virtually impossible to predict who would be there at any given time. With the exception of "Molly Bee," this was a situation in which the police information and knowledge "develop[ed] around and ultimately focus[ed] on a place rather than upon the person[s] occupying the place." *Commonwealth* v. *Franklin,* 358 Mass. 416, 422 (1970). See *Commonwealth* v. *Dinnall,* 366 Mass. 165, 168 (1974); *Commonwealth* v. *Pope,* 354 Mass. 625, 628-629 (1968). This observation does not relax the particularity requirement as it applies to all identifiable persons *known* to be on the premises to be searched,[10] but rather recognizes that persons who might be incriminated as a result of a search pursuant to a valid "any person present" warrant "are already well protected by the stringent requirements for affidavits." *Commonwealth* v. *Franklin, supra.* See G. L. c. 276, §§ 1-2B; *Spinelli* v. *United States,* 393 U.S. 410, 415-419 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 114-115 (1964).

Having said this we nevertheless consider it important to stress that in the overwhelming majority of cases a search based exclusively on the somewhat vague sanction of the language in the "any person present" clause is a clear violation of the proscription against unreasonable searches. An affidavit in support of a warrant which seeks to authorize a search of "any person present" is to be strictly scrutinized. It can only be valid where the underlying circumstances presented to the issuing judge or clerk clearly demonstrate probable cause to search the named premises and to believe that all persons present are involved in the criminal activity afoot. On the latter point, several facts

---

[10] See *Commonwealth* v. *Perada, supra.*

are of particular relevance: the premises or area to be searched are small, confined and private;[11] the nature of the criminal activity is such that the participants (in general) constantly shift or change so that it is, practically, impossible for the police to predict that any specific person or persons will be on the premises at any given time; and the items specifically described in the warrant as the target of the search are of a size or kind which renders them easily and likely to be concealed on the person.

The guidelines of the Court of Appeals of New York as set forth in *People* v. *Nieves,* 36 N.Y.2d at 404-405, are useful. While it is appropriate for a court to rely on the reasonable and common sense inferences to be drawn from the affidavit, as indeed this court has relied in this case, the specificity suggested in the guidelines will tend to insure the careful scrutiny of which we have spoken above. The *Nieves* guidelines are as follows: "An application for this type of warrant must be subjected to rigid scrutiny by the independent Magistrate. It must carefully delineate the character of the premises, for example, its location, size, the particular area to be searched, means of access, neighborhood, its public or private character and any other relevant fact. It must specifically describe the nature of the illegal activity believed to be conducted at the location, the number and behavior of persons observed to have been present during the times of day or night when the warrant is sought to be executed.

"The application should also state whether any person apparently unconnected with the illegal activity has been seen at the premises.[12] The warrant itself must limit the locus of the search to the area in which the criminal ac-

---

[11] As opposed to a public or quasi public place where casual presence of persons for a myriad of noncriminal reasons is to be expected. See *Commonwealth* v. *Snow,* 363 Mass. 778, 791 (1973) (Kaplan, J., dissenting in part).

[12] In the instant case, the frequency and nature of the observations of the reliable informant and the police, considered together, all within a relatively brief time, reasonably raise the probability called for by this factor.

tivity is believed to be confined and, according to the circumstances, may also specify the time for the search.

"In determining the reasonableness of a particular warrant application, it is also appropriate to consider the necessity for this type of search, that is, the nature and importance of the crime suspected, the purpose of the search and the difficulty of a more specific description of the persons to be searched. The risk that an innocent person may be swept up in a dragnet and searched must be carefully weighed" (footnote omitted).

*Exceptions overruled.*

KAPLAN, J. (dissenting). A printed clause at the end of the standard form of warrant purports to command the search "of any person present who may be found to have such property [i.e., a narcotic drug or associated paraphernalia] in his possession or under his control or to whom such property may have been delivered...." (See G. L. c. 276, § 2A, inserted by St. 1964, c. 557, § 3.) On two previous occasions the court has expressed doubt about such language: read as ordinary prose, it is question-begging or self-fulfilling, and in all events it is not specific or particular. *Commonwealth* v. *Snow*, 363 Mass. 778, 786 n.5 (1973). *Commonwealth* v. *Pellier*, 362 Mass. 621, 625 n.3 (1972).

The court now reads the language to mean any person present at the location at the time of the execution of the warrant. This glosses the first fault. The lack of specificity or particularity remains.

I agree with some of the cases cited that when the Fourth Amendment says "particularly describing," it expects something fairly indicative of a person or persons. (Article 14 of our Declaration of Rights requires a "special designation of the persons.") A person may be particularly described (or specially designated) without mention of his name; but it goes to the verge, if not beyond, merely to refer, as here, to indeterminate persons described only by their contingent relationship to a location.

The court suggests that the difficulty may be overcome if it is shown that there was probable cause for the belief that any person who might be present at the location when the warrant was executed would possess the seizable property or at least be engaged in an unlawful activity involving such property. I doubt that this formula can supply the necessary particularity within the tolerances of a constitutional provision directed historically against general warrants.

But if the formula is accepted, then I submit that the police officer's affidavit, relied on as establishing the probable cause, is short of the mark. I agree with the court that the affidavit is to be read with a certain common sense leniency; but even so it seems inadequate. The affiant mentions two illegal sales and says that officers of the drug control unit have conducted "periodic surveillances" during the past week and observed persons, known by the officers to traffic in heroin, entering and leaving the location. The kinds, times, and frequency of the surveillances are not stated. We are not told the number of persons entering and leaving the location who were recognized by the police as heroin traffickers, and nothing is said about the number of persons entering and leaving the location who were not thus suspect. There is no account of how and when persons, suspect or not, congregated at the location. A report fully comprehensive and exact in every detail could not be expected; but without more complete information than was provided in the affidavit, I believe probable cause in the sense of the court's formula was not demonstrated. I suggest that the court should have signalled its insistence on a better demonstration by reversing the conviction, as did the New York Court of Appeals in *People* v. *Nieves,* 36 N.Y.2d 396 (1975). If not in the formula itself, then in applying it to facts, the court sets a precedent that may lead to a not inconsiderable erosion of the Fourth Amendment safeguard. I respectfully dissent.