Toomey, J.
INTRODUCTION
Defendants have moved to suppress evidence obtained as a result of searches of the premises at apartment #1, 47 Grosvenor Street, Worcester and of persons alleged to have been present at said premises at the time of the execution of a search warrant. In support of their motions, defendants assert that:
1. The warrant authorizing the search of the premises was issued without probable cause to believe that controlled substances would be found on said premises;
2. The warrant authorizing the search of any persons present at the premises was issued without probable cause to believe that any person present would possess controlled substances;
3. The defendant, from whose person certain evidence was seized, was not “present,” as required by the warrant, at the time of the seizure.
*292 BACKGROUND
THE WARRANT
On March 2, 1994, a search warrant issued directing the police to search “#47 Grosvenor St., 1st fl rt side apt, Worcester, MA. Any storage areas, entry and exit ways used by same.” The police were also authorized to search “any person present . . .” The warrant sought the seizure of heroin, paraphernalia and the usual incidental items.
The warrant was based upon an affidavit, of even date, which recited information pertaining to certain activity at the premises. The salient portions of the affidavit may be summarized as follows:
1. On February 23,1994, a confidential and reliable informant (CRI) advised the affiant that CRI had' “just seen a quantity of heroin” in the apartment. CRI added that “the occupants . . . would be out of town for a few days.”
2. On February 28, 1994, a “1st time informant” (FTI) advised the affiant that “there was a lot of drug activity at [the apartment].” The FTI described certain characteristics of the building’s exterior which were later corroborated by the affiant’s observation.
3. On March 2, 1994, the CRI advised the affiant that “the people were back at [the apartment] and they were loaded. [The CRI] had just seen a quantity of heroin in [the apartment].” The CRI described, with some detail, the physical appearance of the occupants of the apartment.
4. The CRI had provided information to the affiant on two separate occasions in 1993 and that information had proven to be truthful, resulting in the seizure of items of evidence and the arrest and pending prosecutions of certain named accused.
THE EXECUTION
On March 2, 1994, Worcester police officers, acting pursuant to the warrant, entered the apartment. Present were Cristobal Lopez and Deidre Britt. A quantity of controlled substances and paraphernalia were seized from locations inside the apartment.
While the apartment search was on-going and about one hour after the police had entered upon the premises, one of the officers observed a taxi stop in front of the building. Three persons (the defendants), two of whom fit the descriptions supplied by CRI to the affiant earlier that day, stepped from the cab. The three defendants entered the unlocked front door of the building and proceeded into the hallway on either side of which were doors to the two first floor apartments.
The officer listened as the three neared the door to the target apartment. The police heard “approaching footsteps” and “rustling keys.” A key was inserted into the exterior lock and the police observed the door knob “turning.” The officers opened the door and confronted the three defendants. After about three minutes, during which the three were searched, the defendants were directed to enter the apartment. In a black, nylon bag carried by defendant Cruz the police found a quantity of loose heroin, 46 bags of heroin, and a bank book in which was recorded a March 2, 1994 deposit of $2,296.55. The bank book and other papers found in the bag bore the name of defendant Cruz.
DISCUSSION
1. The entry of the police into the apartment, and their consequent seizure of evidence inside the apartment and from Cruz’ bag, was effected in compliance with a premises warrant issued upon probable cause. The affidavit satisfied the Aguilar-Spinelli-Upton demand that the CRTs basis of knowledge and veracity be demonstrated within its four- corners. Commonwealth v. Upton, 394 Mass. 363, 374-75 (1985). The assertion of personal observation satisfied the former and the recitation of prior, accurate information fulfilled the latter. Commonwealth v. Perez-Baez, 410 Mass. 93, 45-46 (1991). The contributions of the FTI and the exterior observations of the police were not of great moment, but did serve to provide a degree of corroboration of CRTs assertions. CRTs information, as recounted in the affidavit was quite enough to provide probable cause and the corroborative effect of the other assertions constituted “frosting.” Hence, I am not persuaded by defendants’ contention that the affidavit was insufficient and the search warrant it precipitated was constitutionally defective.
2. Defendants next argue that the affidavit was inadequately detailed to permit the search of “any person present” on the premises targeted by the warrant. That argument, too, must fail because the recitations in the affidavit did provide the issuing magistrate with probable cause to believe that persons found on the premises might be in possession of the items marked by the warrant. Commonwealth v. Smith, 370 Mass. 335 (1976), controls this inquiry and directs the court’s view to the three factors which the Supreme Judicial Court considers to be generally determinative, to wit, the properties of the premises, the characteristics of the criminal activity and the nature of the items sought to be seized. More particularly, Smith teaches that, if the affidavit speaks of premises that are small, confined and private, criminal activity that is fluid and transitory and items that are concealable on the person, the affidavit will property support an “any person present” authorization. Id. at 344-45.
At bar, the affidavit does indeed satisfy the Smith litmus. By reference to one “apartment” in a building consisting of “floors” and with living quarters on each “side,” the affidavit, read without hypertechnnicality and with commonsense, suggests that its target is a residential, single family unit and readily supports the inference that the premises are small, confined and private. So too, the affidavit’s assertion that, on multiple occasions, quantities of heroin were observed on the premises melds easily with the unchallengeable fact that heroin is usually packaged, distributed and *293 ingested in some haste — not kept as a curiosity in one’s abode — to permit the assumption that the heroin observed by CRI would not likely remain long on site and would be in the keeping of persons whose comings and goings would not be amenable to prediction. And, surely the affidavit’s claim that the occupants were “loaded,” when considered in the context of the accepted notion that heroin is commonly packaged in quantities susceptible to transport on the person, allows the inference that the heroin would not be alien to a pocket, a purse or some similar form of on-the-body conveyance.
Each of the Smith criteria having been satisfied by the instant affidavit, there is compelling reason for this court to conclude that the affidavit sufficiently suggested cause to believe that what was probably on the premises was also probably on the persons of those who were present on the premises.
3. Finally, defendants assert that they were not “present” at the premises to be searched and thus were not within the reach of the warrant. They claim that, having not crossed the threshold into the target apartment, they were outside the warrant’s ambit. The contention is without merit for two reasons.
First, the warrant authorized the search of the four corners of the apartment and “any storage areas, entry and exitways used by same.” The hallway between the building’s outer door and the apartment’s door is, indisputably, an “entry or exitway used by [the apartment occupants].”
Second, by inserting a key into the apartment door in preparation to enter, the defendants established a relationship with the apartment that constitutes “presence.” This Court rejects the semantic surgery by which defendants conclude that their inchoate entry relieves them of the burden of being “persons present.” Certainly, if the policy that underpins the “any person present” doctrine — viz, that, in certain circumstances, the probable cause to search premises embraces persons possessing a certain relationship with those premises and obviates the need for a particularized, as to person, warrant — applies to those in occupancy at the inception of the execution of the warrant, it applies with equal force to those who have a like relationship with the premises, albeit arising after the search has commenced. There is no logic in distinguishing between those on the premises ab initio and those arriving during the undertaking. If there is probable cause solely by reason of physical location, as to the former, there is probable cause also as to the latter.
CONCLUSION
The affidavit presented the issuing magistrate with probable cause to believe that heroin was located in the target apartment and that any person present therein would be in actual possession of heroin. Further, the search of defendants at the threshold of the apartment was consonant with the “any person present” command of the warrant. Accordingly, the searches and seizures that produced the evidence sought to be excluded were lawful and the defendants’ motions to suppress said evidence will be DENIED.