COMMONWEALTH *vs.* CEDRIC S. BROWN.

No. 05-P-1858.

Plymouth. October 3, 2006. - February 20, 2007.

Present: PERRETTA, LENK, & DOERFER, JJ.

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Warrant, Probable cause. *Practice, Criminal,* Warrant, Affidavit. *Probable Cause.*

A trial court judge properly granted a criminal defendant's motion to suppress evidence seized as a result of a search of his person pursuant to a search warrant, where the warrant, which specifically identified the place to be searched (the defendant's residence) and the items to be seized, did not, other than authorizing a search of "any person present," specifically identify the defendant as a person to be searched, and where the affidavit supporting the warrant did not in any event provide an adequate basis to establish probable cause to search any person that might have been present at the targeted premises when the warrant was executed [265-267]; further, there was no merit to the Commonwealth's contention that the omitted information identifying the persons to be searched could be found within the four corners of the remainder of the warrant itself or gleaned from the supporting affidavit, which was not physically attached to the warrant upon issuance and did not otherwise accompany the warrant when executed [267-270].

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on July 19, 2004.

A pretrial motion to suppress evidence was heard by *David G. Nagle, Jr.,* J., and a motion for reconsideration was considered by him.

An application for leave to prosecute an interlocutory appeal was allowed by *Roderick L. Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

*John W. Burke* for the defendant.

LENK, J. The Commonwealth appeals from an order allowing the defendant's motion to suppress evidence seized as the result of a search of his person. The search warrant pursuant to which the search was conducted specifically identified the place to be searched (the defendant's residence) and the items to be seized but, other than authorizing a search of "any person present," did not specifically identify the defendant as a person to be searched. The issue before us is whether the search of the defendant's person pursuant to the search warrant as issued and executed violated the Fourth Amendment to the United States Constitution. Concluding that probable cause did not exist to support the issuance of a warrant to search any person present, we hold on the basis of *Groh* v. *Ramirez*, 540 U.S. 551 (2004), and *Commonwealth* v. *Forish*, 61 Mass. App. Ct. 554 (2004), that the warrant's failure to specify the person to be searched resulted in an unlawful general search. To the extent that the search is sought to be justified as having occurred pursuant to such search warrant, the evidence seized from the search of the defendant's person was properly suppressed.

*Background.* A complaint issued on July 19, 2004, charging the defendant with possession of cocaine with intent to distribute it, possession of marijuana, and violation of the controlled substance law in a school zone. The defendant's motion to suppress all evidence seized was initially denied but, upon reconsideration, later allowed insofar as the seizure resulted from the search of his person. A single justice of the Supreme Judicial Court granted the Commonwealth's motion for an interlocutory appeal, and the matter is now before us.

On July 15, 2004, Detective Robert F. Diliddo of the Brockton police department applied for a search warrant supported by his own affidavit. He appears to have used the form application, affidavit, and search warrant promulgated by the Trial Court. See *Commonwealth* v. *Forish*, *supra* at 557 n.6. The Diliddo affidavit sets forth the following information. On July 11, 2004, a confidential informant (CI) told a member of the Brockton police department that the CI had been buying crack cocaine from Shawn Brown, who lived with his mother in a second floor apartment at 46 Ford Street, Brockton, and drove a small

white car with Massachusetts license plate number 17GS14. The CI stated that the CI would call a certain telephone number to order the cocaine; Shawn would then either meet the CI at the corner of Ford and Main Streets, or have the CI come directly to 46 Ford Street, where Shawn would come down from the second floor to deliver the designated amount of drugs. The CI stated that "Shawn lives with his mother and that is why he will not allow any one to enter his apartment."

The police confirmed that a white Toyota Corolla bearing the above plate number was registered to a Jennifer Brown, who lived at 46 Ford Street, Apt. 2; computer records from the Brockton police department and the board of probation confirmed that the defendant, Cedric Brown, born on January 27, 1983, to Jennifer Brown, also lived in that apartment. The police obtained a booking photograph of the defendant; the CI confirmed that the defendant was the person the CI knew as Shawn, who had sold the CI drugs outside 46 Ford Street.

On July 12 and 13, 2004, the police conducted two controlled buys; on each occasion, after the CI called the designated number, the police observed the defendant come out of 46 Ford Street, lean into the window of the CI's car, and return into the building. During their surveillance of the buys, the police noted that lights were on in the second floor apartment while the first floor was in darkness and that the white Toyota Corolla was parked in the driveway. The CI confirmed that on both occasions the defendant had sold the CI cocaine, and the substances retrieved from the CI tested positive for that drug. On July 15, 2004, the police applied for a search warrant; one issued that same day. The return of the officer serving the warrant indicates that the search was conducted on July 16, 2004, at 6:00 P.M.

We turn to the application for a search warrant that Diliddo completed. In section three of the application form, which asks the applicant to "describe the property to be searched for as particularly as possible," Diliddo requested that the police be allowed to search for "cocaine, . . . any monies, records of transactions, paraphernalia related to the distribution of the above and identification of those present."

Section four of the application form begins with the following words: "Based upon this information, there is also probable

cause to believe that the property may be found (check as many as apply)." Three blank boxes then appear. The first box is followed by the words "at (identify the exact location or description of the place(s) to be searched): _____ which is occupied by and/or in the possession of: _____." The second box is followed by the words "on the person or in the possession of (identify any specific person(s) to be searched): _____." The third box is followed by the words "on any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered." Diliddo checked all three boxes. After the first box, in the space provided for the applicant to identify the location of the place or places to be searched, Diliddo indicated "46 Ford St., Apt. #2 second floor, Brockton, MA, a two story white house of wood construction, grey slate roof with wood front door, which is occupied by and/or in the possession of: Cedric Brown, AKA 'Shawn,' date of birth 1-27-83." After the second box, where the applicant was to identify the specific person or persons to be searched, Diliddo provided no information, leaving the line blank.

The search warrant itself is virtually identical to the application in all material respects. The property to be searched for is described with particularity, as is the location of the place to be searched, but the line calling for identification of the person or persons to be searched is blank. The warrant also authorized the search of "any person present."

Nothing in the record before us suggests that the supporting affidavit was physically attached to the search warrant when issued or executed.[1] After the search warrant issued and while the police were en route to the designated apartment to execute the warrant, they came upon the defendant, who was standing on

---

[1] To the contrary, the index to the record appendix accompanying the Commonwealth's brief lists as three separate documents the search warrant and return, the application for search warrant, and the affidavit in support of application for search warrant. Nothing in the appearance of the documents themselves indicates that any was physically attached to the other. The transcripts of the nonevidentiary motion hearings conducted on October 7, 2004, and November 5, 2004, appear to treat the three documents as separate documents but do not directly address the point. The Commonwealth does not suggest otherwise.

the first floor porch of 46 Ford Street. They detained and apparently searched him there, seizing cocaine and money. They then searched the designated second floor apartment, seizing marijuana, a wallet with the defendant's name in it, and miscellaneous paperwork.

*Analysis.* We begin with the text of the Fourth Amendment to the United States Constitution:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Commonwealth maintains that the search warrant is valid and that the search of the defendant's person pursuant to it does not violate the Fourth Amendment. The Commonwealth relies, first, on the authorization to search "any person present." Second, and in the alternative, the Commonwealth contends that should we determine that that portion of the warrant does not authorize the search of the defendant, the remainder of the warrant can nonetheless be read as supplying the requisite particularity. While the Commonwealth maintains that the warrant on its face can reasonably be construed as implicitly identifying the person to be searched, the Commonwealth also suggests that, when read with the supporting affidavit, there can be little doubt that the defendant was the sole intended target of the search.

1. *Any person present.* Because "the law requires a particular description of the persons to be searched pursuant to a warrant," *Commonwealth* v. *Smith*, 370 Mass. 335, 339, cert. denied, 429 U.S. 944 (1976), "only in special circumstances will a search warrant aimed principally at the premises also be held validly to include the search of any person present." *Commonwealth* v. *Souza*, 42 Mass. App. Ct. 186, 189 (1997). The authorization to search any person present is directed principally at persons other than those "identifiable persons *known* to be on the premises to be searched" (emphasis in original). *Commonwealth* v. *Smith, supra* at 344. As to the latter, the particular-

ity requirement is not to be relaxed. Moreover, when called upon to review the validity of a search conducted under the auspices of "any person present" language in a warrant, we scrutinize strictly the affidavits submitted in support of a warrant seeking to authorize such a search. *Ibid.* "It can only be valid where the underlying circumstances presented to the issuing judge or clerk clearly demonstrate probable cause to search the named premises and to believe that all persons present are involved in the criminal activity afoot." *Ibid.*

As a person identified in the Diliddo affidavit as an occupant of the targeted premises, the defendant would seem to be an "identifiable person[] *known* to be on the premises to be searched," and the particularity requirement as to him is not to be relaxed by encompassing him within the anonymity and generality of the "any person present" designation. Otherwise put, the defendant is not just "any person present" when the premises are searched; he lives there, and the police know this. See, e.g., *Commonwealth* v. *Charros*, 443 Mass. 752, 760 n.5, cert. denied, 546 U.S. 870 (2005). But even if we were to assume for the sake of argument that the defendant could be so characterized, the Diliddo affidavit did not in any event provide adequate basis to establish probable cause to search any person that might have been present at the targeted premises when the warrant was executed.

In assessing the affidavit, we consider, among other things, whether it delineated the character of the premises (location, size, means of access, neighborhood, whether public or private), the nature of the illegal activity conducted there, the number and behavior of persons present there at times comparable to the time when the warrant will be executed, and whether any persons apparently unconnected with the illegal activity had been seen at the premises. See *Commonwealth* v. *Smith, supra* at 345-346. Of concern in this regard is "[t]he risk that an innocent person may be swept up in a dragnet and searched . . . ." *Id.* at 346, quoting from *People* v. *Nieves*, 36 N.Y.2d 396, 404-405 (1975). See *State* v. *Kinney*, 83 Ohio St. 3d 85, 96 (1998), cert. denied, 526 U.S. 1007 (1999) (evidence in affidavit expressly indicating innocent persons and activity on premises precludes finding of probable cause to search all persons on premises).

The Diliddo affidavit reflects that the CI told police that the defendant did not want anyone in his apartment because his mother also lived there. The affidavit describes two controlled buys which were transacted entirely outside of the apartment. Nothing in the affidavit suggests that there were other visitors to the apartment who came and went in ways indicative of criminal activity within. See *Commonwealth* v. *Griffin*, 45 Mass. App. Ct. 396, 398-399 (1998). While the affidavit demonstrates a sufficient nexus between the drug transactions and the apartment to establish probable cause to search the apartment, see *Commonwealth* v. *O'Day*, 440 Mass. 296, 302 (2003); *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. 210, 212 (2005), there is no suggestion that the defendant's mother or any visitors to be found in the apartment were in any way implicated in any illegal activity. Contrast *Commonwealth* v. *Perez, post* 282, 284-285 (2007). That being so, it follows that the affidavit does not provide probable cause "to believe that all persons present are involved in the criminal activity afoot." *Commonwealth* v. *Smith, supra* at 344. The "any person present" portion of the warrant cannot stand.[2],[3]

2. *The remainder of the warrant.* Since the tainted portion of a search warrant may be severed from a valid portion, *Commonwealth* v. *Lett*, 393 Mass. 141, 142 (1984), the question then becomes whether the omission from the face of the warrant of information identifying the persons to be searched is

---

[2]The Commonwealth maintains that because the defendant was targeted in the affidavit and in fact was the only one searched, there was no risk to anyone else in the apartment. We evaluate the validity of the "any person present" portion of the search warrant, however, on the information that was before the issuing magistrate. *Ybarra* v. *Illinois*, 444 U.S. 85, 91 (1979). See *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. at 212. The magistrate did not and could not know whether the mother (or others) would be present and searched when the warrant authorizing such search was executed. To the extent that the Commonwealth also contends that had the mother also been searched, she could have challenged the "any person present" portion of the warrant, but the defendant may not do so on her behalf, the argument fails. The defendant, on his own behalf, challenges the validity of the search warrant pursuant to which his person was searched. Unlike in *Commonwealth* v. *Truax*, 397 Mass. 174, 180 (1986), the Commonwealth here seeks to justify the search of the defendant himself by the "any person present" language of the warrant.

[3]We do not reach the question whether the first floor porch where the defendant was detained and apparently searched is properly considered to be an authorized place of search in connection with the warrant.

fatal to its validity as a basis for the search of the defendant. The Commonwealth contends that the remainder of the warrant can be read to supply that inadvertently omitted information. Specifically, the Commonwealth points to the portion of the warrant that authorizes a search for specified items located "at" the particularly described second-floor apartment "which is occupied by and/or in the possession of Cedric Brown, AKA 'Shawn,' date of birth 1-27-83." Any reasonable person, the Commonwealth maintains, would understand that, although the defendant was not specifically named in that portion of the warrant authorizing a search for specified items "on the person or in the possession of: _____," it was plainly the defendant whom the police were authorized to search. Even if the warrant standing alone does not make this clear, the Commonwealth argues that there can be no question about whom the search targeted when it is read in conjunction with the supporting affidavit.

In *Groh* v. *Ramirez*, 540 U.S. 551 (2004), the Supreme Court explained that the language of the Fourth Amendment requires that the warrant itself — not the supporting documents — identify particularly the place to be searched and the persons or things to be seized. The reasons for this are twofold: it prevents general searches, and it "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id.* at 561, quoting from *United States* v. *Chadwick*, 433 U.S. 1, 9 (1977). That the affidavit or application "adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity" (emphasis in original). *Groh* v. *Ramirez*, 540 U.S. at 557.

In *Groh*, the supporting affidavit and the application for the warrant provided a detailed and itemized list of the things that the police intended to seize. *Id.* at 554. The warrant itself, however, failed to describe the items, describing the place to be searched instead of the items to be seized. *Ibid.* The *Groh* Court concluded that this omission "could [not] be characterized as a mere technical mistake," holding that, where the warrant did not incorporate other documents by reference, and where neither the application nor the affidavit accompanied the warrant, "the warrant was so obviously deficient that we must regard the

search as 'warrantless' within the meaning of our case law." *Id.* at 558.

In *Commonwealth* v. *Forish*, 61 Mass. App. Ct. at 557-558, both the application and the warrant suffered from the same defect as in *Groh*: in the space designated on both documents to describe the items to be searched for and seized, the applicant had substituted the place where he believed the items to be located. As here, the *Forish* search warrant contained what we characterized as "[t]he perfunctory statement in the standardized search warrant form regarding '[p]roof by affidavit, which is hereby incorporated by reference.' " *Id.* at 560. Such language, we said, "does not supply the requisite particularity." *Ibid.* The affidavit in *Forish* was not attached and made part of the warrant at issuance and the Commonwealth failed to establish at the hearing on the motion to suppress that the supporting affidavit was attached to the search warrant or otherwise present at the time the warrant was executed. *Id.* at 560-561.

Relying on *Groh*, we concluded in *Forish* that the search warrant was invalid and that the motion to suppress evidence seized should have been allowed. "What is fatal to the Commonwealth's case is the lack of particularity in the warrant and the absence, both at issuance *and* on execution, of an attached affidavit that specified the objects of the search" (emphasis in original). *Id.* at 560.

Likewise, nothing in the record, the briefs, or at argument here even suggests that the Diliddo affidavit was physically attached to the search warrant upon issuance or otherwise accompanied the warrant when executed. We cannot, then, construe the search warrant with reference to the supporting affidavit. That leaves us to the four corners of the search warrant itself. The Commonwealth contends that because the preceding portion of the warrant authorized a search of the apartment "occupied by and/or in the possession of: Cedric Brown," a reasonable person would understand — without recourse to other supporting documents — that only Cedric Brown was the person to be searched. The warrant does not, of course, name anyone as a person who may be searched, and it is at least as reasonable to read the warrant as not authorizing the search of any known person at all, just of the *apartment* which Cedric Brown "occupies and/or possesses."

One without recourse to the affidavit would not learn from the warrant itself who resides at or might have access to the apartment which Cedric Brown "occupies and/or possesses"; Brown himself might only possess it and reside elsewhere, or may live with others whom the police think are involved with drugs. Nor does the warrant, standing alone, reveal who it is that may be linked to the illicit drugs and drug-related items believed to be in that apartment. That is precisely the problem with the warrant as issued and executed. The search warrant accordingly did not satisfy the particularity requirement of the Fourth Amendment,[4] and thus was not a lawful basis for the search of the defendant.[5]

*Conclusion.* So much of the order as allows the defendant's motion to suppress evidence seized as the result of the search of his person pursuant to the search warrant is affirmed. To the extent that the balance of the order may be read as suppressing evidence seized from the defendant's apartment, that portion of the order is reversed.

*So ordered.*

---

[4]On the view we take of the case, it is unnecessary to consider the defendant's argument as it relates to art. 14 of the Massachusetts Declaration of Rights.

[5]The Commonwealth did not argue below or on appeal that it relies on any exception to the search warrant requirement and has not suggested that it might be able to justify the search of the defendant's person on a warrantless basis. Given this, the fact that there have not been any evidentiary hearings, that the record is sparse (particularly as to the circumstances surrounding the search and arrest of the defendant), and that the burden rests with the Commonwealth to justify a warrantless search, we express no opinion on the matter. Compare *Commonwealth* v. *Catanzaro*, 441 Mass. 46, 49 n.5 (2004); *Commonwealth* v. *Charros*, 443 Mass. at 764-765.